[No. 11965.   Department Two. — April 27, 1889.]

# FIRST NATIONAL BANK OF OAKLAND, APPELLANT, *v.* A. WOLFF, RESPONDENT.

ALTERATION OF NOTE—IMMATERIAL ALTERATION. — A note is not avoided by immaterial alterations innocently made, which do not affect the obligation of the instrument, or change the meaning of the note.

ID. — INSERTION OF RATE OF INTEREST. — If the insertion of a rate of interest in a note, to fill up a blank after its signature, was authorized, it would bind the maker. If not authorized, the note would bear interest at the legal rate, and the insertion of an unauthorized rate would not render the note void.

ACCOMMODATION NOTE — COLLATERAL SECURITY — RELEVANCY OF EVIDENCE. — In an action on an accommodation note, which was secured by a warehouse receipt for grain, if the complaint alleges that the security had become valueless without the act or fault of the payee of the note, and that the grain had been removed, and was in litigation between third parties, it is proper and relevant to the issues to ask the one for whose accommodation the note was given in reference to his knowledge of the ownership and disposal of the grain; and the president of the plaintiff bank may properly testify as to inquiries made by him about the grain.

ID. — EVIDENCE — CONVERSATION. — Evidence of a conversation between the accommodation maker of a note and the one who received the money paid thereon, had after the discounting of a note by a bank, which was the payee, is not competent against the bank, if no one representing the bank is present; but if the bank proves such conversation by one of the parties thereto, the other party may testify regarding the conversation.

EVIDENCE — IMPEACHMENT. — It is error to strike out the evidence of a witness called to sustain the reputation of another witness for truth, honesty, and integrity, against an attempted impeachment thereof, on the ground that the witness had never heard such reputation discussed, or talked with any one about it, if he states that he has known the witness personally for twenty-seven years, and knows what his reputation is, and that it is good.

CONDUCT OF TRIAL — ORDER OF EVIDENCE — DISCRETION — EXPERT. — Allowing an expert to testify on behalf of defendant after he has rested his case, and plaintiff has introduced rebutting testimony, is within the discretion of the trial court, with which the appellate court will not interfere.

JUDGMENT ON VERDICT — DIRECTORY PROVISION AS TO TIME. — The failure of the clerk to enter judgment on the verdict within twenty-four hours after the verdict, as required by section 664 of the Code of Civil Procedure, does not affect the validity of the judgment afterwards entered. The provision of the statute upon that subject is merely directory.

APPEAL from an order of the Superior Court of Alameda County denying a new trial.

The principal facts are stated in the opinion of the court. The questions asked of the witness Bennett related to the ownership, acquisition, and disposal of the grain referred to in the note as securing the same. The defendant sought to impeach the witness Bennett; and the testimony of D. Stuart, called in rebuttal, was, that he had known the witness Bennett about twenty-seven years, and knew his reputation for truth, honesty, and integrity, and that it was good, and he would believe him on oath; but his evidence was stricken out, because on cross-examination he stated that he had never heard his reputation discussed, nor talked with any one about it. The witness Gumpel was allowed to testify as an expert on behalf of defendant, after the defendant had rested, and plaintiff had introduced his rebutting testimony.

*William R. Davis,* and *William Lair Hill,* for Appellant.

*Metcalf & Metcalf,* for Respondent.

THORNTON, J.—Action by plaintiff against defendant on a promissory note. Verdict and judgment passed for defendant. The appeal is prosecuted by plaintiff from an order denying its motion for a new trial.

The execution of the note was denied by the defendant, and the main issue was, whether or not the note sued on was or was not a forgery.

The note as offered in evidence was in these words:—

"$2,000.        OAKLAND, CAL., Oct. 27, 1882.

"One day after date, without grace, for value received, I promise to pay to the First National Bank in this city, to First National Bank *of Oak'd,* or order, two thousand dollars, payable in gold coin, with interest thereon in like gold coin from date until paid, at the rate of nine per cent per *annum,* payable monthly in advance.

"Secured by grain in Hayward's warehouse.

"No. *Receipt No.* 124.        "A. WOLFF."

The plaintiff's contention is, that the note was signed by Wolff as an accommodation to R. H. Bennett, who received the money on it on the 28th of October, 1882, from the plaintiff.  When signed by Wolff the words "of Oak'd" were not in it, and the rate of interest was left blank.  Bennett testified that the note was signed and handed to him by defendant, with rate of interest left blank, for the reason that they did not know what rate the bank would charge, and that he was empowered by Wolff to fill up the blank with the rate agreed on.  He so informed the bank, and after some conversation with one of the officers of the bank, the rate of nine per cent per annum was agreed on, and the blank was so filled in by Bennett or at his instance.  At the end of the note was written by Bennett, "Receipt No. 124."  The insertion of the words "of Oak'd" was immaterial.  The form of the note used showed that the bank was the First National Bank of Oakland.  The note was dated at "Oakland," and the form used contained the words "at the First National Bank of this city."  This could mean no other bank than the First National Bank of Oakland, and therefore the insertion "of Oak'd" added nothing to the note that it did not mean before, and was immaterial.

The words "Receipt No. 124" were no part of the note, and did not affect its meaning in any way.  The purport of these words was, that the receipt No. 124 was a security for the payment of the money for which the note was executed.  We cannot see that they were material, or affected the note in any way.

If Bennett had authority from defendant to fill up the blank with the rate of interest, the insertion of the rate was not at all improper, and would bind defendant.  If he had not such authority, and Wolff signed the note and delivered it to Bennett to raise money on it, it bore interest at the legal rate, and the insertion of it would not render the note void.

We are of opinion that the insertions were innocently made, and that the note was not avoided by them, for the reason above stated.

From the note itself, it appears that it was secured by grain in Hayward's warehouse as collateral. The receipt, the number of which was appended to the note, called for 1,198 sacks of wheat stored in the warehouse above stated. It is averred in the complaint that the security above mentioned had, without any act or default of plaintiff, become valueless; that the grain, of which the security consisted, had since the delivery of the note to plaintiff been, without the act or fault or consent of plaintiff, removed from the warehouse to places unknown to plaintiff; that this grain was at the time of the commencement of this action the subject of litigation between persons not parties to this action, and it was there claimed to be owned by persons unknown to the plaintiff, other than those who had asserted their claims by such claims or actions.

On the trial, Bennett was asked several questions in relation to this grain, which were objected to. The objections were overruled, and the plaintiff, by its counsel, reserved exceptions.

We can see no good reason why the questions or the answers to them were not properly admitted in evidence. All of them had relation to the transaction, and were relevant to the issues joined in the cause.

We find no error in the ruling as to the question put to Moody, the president of the plaintiff bank, as to making inquiry about the grain which purported to have been pledged to secure payment of the note.

But in our judgment the court erred in allowing the introduction of Wolff's conversation with Bennett about the note in suit, which took place after the bank had acquired the note sued on, and when no one representing the bank was present.

The court also erred in striking out the testimony of

D. Stuart. The witness was competent and his testimony admissible.

The allowing Gumpel to be called at the stage of the trial at which he was introduced as a witness was a matter within the discretion of the court below, with which this court is not authorized to interfere. (*Barkly v. Copeland*, 74 Cal. 1.)

The failure of the clerk to enter judgment on the verdict within twenty-four hours after it was rendered was not error.

The injunction of the statute (Code Civ. Proc., sec. 664), in that regard is directory only, and does not affect the legality or validity of the judgment afterward entered. Further, if the plaintiff felt aggrieved by the failure of the clerk to enter the judgment within the time designated by the statute, he might have moved the court for an order directing him to do so, which no doubt would have been granted. Moreover, we cannot see how the plaintiff was in any manner injured by the delay of the clerk in entering the judgment.

We find no other errors than those above pointed out, but for those the order denying plaintiff's motion for a new trial is reversed, and the cause remanded, that a new trial may be had in accordance with the views expressed in this opinion.

So ordered.

McFARLAND, J., and SHARPSTEIN, J., concurred.

A petition for a rehearing having been made, the following opinion was rendered thereon, on the 25th of May, 1889:—

The COURT. —The rehearing is denied; but we are of opinion that the court did not err in allowing Wolff's testimony regarding his conversation with Bennett as to the note in suit, inasmuch as Bennett had, as witness for the plaintiff, previously testified as to it.

The opinion heretofore filed is modified in that respect.