[Civ. No. 1176.    Third Appellate District.—December 16, 1913.]

CARL VOLQUARDS, Appellant, v. JOHN H. MYERS, Executor of the Will of Lillie Sophia Volquards, Also Known as Lillie Sulsberg Volquards, Deceased, Respondent.

HUSBAND AND WIFE—CONVEYANCE OF PROPERTY TO BOTH—PRESUMPTION OF TENANCY IN COMMON.—While it is true that the presumption established by section 164 of the Civil Code, that a married woman takes the part of property conveyed to her and her husband as tenant in common unless a different intention is expressed in the instrument, is not conclusive and may be disputed and overthrown by other testimony, nevertheless the presumption is itself evidence which may outweigh the positive testimony of witnesses against it, and will stand as evidence in the case until it is overcome by other testimony.

ID.—DISPUTABLE PRESUMPTION—SUFFICIENCY OF EVIDENCE TO OVERCOME—REVIEW ON APPEAL.—Whether or not, in any case, a disputable presumption has been dispelled by testimony received in

rebuttal thereof, is a question whose solution is solely with the trier of the facts, and while a trial court or jury cannot arbitrarily accept a disputable presumption as against other testimony received in direct opposition thereto, yet, unless it is clearly and unmistakably made to appear that an arbitrary course in that regard has been followed by the trial court or jury, it does not rest within the legal power or right of an appellate court to say that the presumption should have been rejected as having been dispelled by the evidence set up against it.

Id.—Presumption that Wife Holds as Tenant in Common—Insufficiency of Husband's Testimony to Overthrow.—In this action by a husband against the executor of the will of his deceased wife to establish his claim of sole ownership to real estate conveyed to him and to her during her lifetime, the trial court did not abuse its discretion in holding that the testimony of the husband that he purchased the property with his separate money and gave his wife no interest therein was not sufficient to overcome the presumption that she was owner of an undivided one-half interest in the property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Edgar T. Zook, Judge presiding.

The facts are stated in the opinion of the court.

Edgar C. Levey, George M. Lipman, and J. P. O'Brien, for Appellant.

E. D. Knight, for Respondent.

HART, J.—An action to determine an adverse claim to certain real property, situated in the city of San Francisco.

Judgment passed for the defendant, and the plaintiff submits this appeal from said judgment and from the order denying his motion for a new trial.

The only point made by the plaintiff is that the findings are not justified or supported by the evidence.

The land in controversy, which consists of a building lot, was, by a grant, bargain, and sale deed, conveyed to the plaintiff and his wife, Lillian Volquards, by one Wallace Bradford and his wife on the ninth day of February, 1907.

After the conveyance of said property as above stated, Lillian Volquards died, leaving a last will and testament,

whereby she disposed of all her separate estate, among which was an undivided one-half interest in the real property in dispute. The defendant was named in said last will and testament as the executor thereof.

The plaintiff makes the claim that the real property involved in this issue was, at all times, his separate estate, having been entirely paid for by him from his separate funds, and that the claim of the defendant, as the executor of his deceased wife's testament and estate, to an interest in said property is wholly without legal justification.

By the terms of section 164 of the Civil Code, the presumption is that, by the conveyance of the land in dispute to the plaintiff and his wife, there being expressed in the instrument of conveyance no different intention, the wife took the part conveyed to her as tenant in common.

The plaintiff's was the only oral testimony offered before and received by the court. He declared, on direct examination, that the full purchase price of the property was the sum of three thousand seven hundred dollars, and that, at the time of the purchase, he made a cash payment of one thousand two hundred dollars, of which amount he already had six hundred dollars and the balance, six hundred dollars, he "borrowed from an interest in a ranch that I had before I was married," said ranch being situated in Tulare County. The balance of the purchase price, he stated, he borrowed from the Providential Building and Loan Association. Under his contract with said association, he was to liquidate the indebtedness thus incurred by making to said association monthly payments of thirty-three dollars, and these payments he made, so he testified, partly out of his own earnings as a carpenter and partly from moneys he received on the interest he had in the ranch above referred to. "At the time the deed was executed," he proceeded, "my wife was not there; Mr. Gunther was there. My wife never contributed any money toward the purchase price of this property. I never had any agreement with my wife that any part of the property should become her separate property. I never made a deed of gift to my wife as to any part of this property."

On cross-examination he stated that he finally discontinued his relations as to the lot in question with the loan association by paying the latter up in full. There was a balance

due said association from the plaintiff by reason of the transaction of about two thousand dollars. He said that, in order to settle with the loan association he borrowed one thousand dollars from the San Francisco Savings Union, a banking concern in the city of San Francisco. This sum, he admitted, "was borrowed on the joint note of myself and wife." He then paid the association up in full by adding to the one thousand dollars so obtained the sum of one thousand dollars which he received on the sale of two United States government bonds, each of the denomination of five hundred dollars, which bonds, he admitted, belonged to his wife, but of which, he declared, she had made him a gift, to dispose of them as he pleased. He admitted that his wife owned a lot in Burlingame, that she had some money in bank and four United States bonds, each of the denomination of five hundred dollars, of which number of bonds two were given to him, as above stated. He further admitted that his wife personally made most of the monthly payments of thirty-three dollars, hitherto mentioned, to the building and loan association, but insisted, as he declared on his direct examination, that those payments were invariably made out of his separate funds.

It is further made to appear that, on July 14, 1910, the plaintiff, in the names of himself and wife, brought an action in the superior court in and for the city and county of San Francisco, under and by virtue of an act of the legislature, popularly known as the "McEnerney Act," and entitled "An act to provide for the establishment and quieting of title to real estate in case of the loss or destruction of public records," approved June 16, 1906, the purpose of said action being to secure a decree establishing and quieting the title of the plaintiffs to the property in dispute, the record evidence of the title having been destroyed. The judgment-roll in said action was introduced in evidence in the present action, and therefrom it appears that the complaint in said action alleged "that the plaintiffs are the owners of the above described real property, and each and every part thereof, in fee simple absolute," and the court therein found, and entered its decree accordingly, "that said plaintiffs are the owners of and seized in fee simple absolute and in the actual and peace-

able possession of all of the real property described in said complaint.''

Thus we have reproduced in substance all the evidence which was presented at the trial and upon which the trial court grounded its findings.

The question which we are called upon to decide, stated concretely, is whether the trial court, by the conclusion at which it arrived upon the legal effect or evidentiary value of the plaintiff's testimony, transcended the bounds of the discretion which, in the very nature of things, must be left to such court in the decision of questions of fact. A careful examination of the plaintiff's testimony, in its entirety, as it is presented by the record, justly forbids such a conclusion by this court.

It is true that the presumption established by section 164 of the Civil Code is not conclusive, but may be disputed and overthrown by other testimony. Nevertheless, however, the presumption is itself evidence which may outweigh the positive testimony of witnesses against it, and will stand as evidence in the case until it is overcome by other testimony (*People* v. *Milner,* 122 Cal. 179, [54 Pac. 833]; *Reclamation District No. 70* v. *Sherman,* 11 Cal. App. 419, [105 Pac. 277]), and whether, in any case, a disputable presumption has been dispelled by testimony received in rebuttal thereof, is a question whose solution is solely with the trier of the facts, and, while, manifestly, a trial court or jury cannot arbitrarily accept a disputable presumption as against other testimony received in direct opposition thereto, yet, unless it is clearly and unmistakably made to appear that an arbitrary course in that regard has been followed by the trial court or jury, it does not rest within the legal power or right of an appellate court to say that the presumption should have been rejected as having been dispelled by the evidence set up against it.

The legal right of a trial court or jury to repudiate the testimony of any witness, where, in the consideration of such testimony, it is found to be unworthy of credence, will not, of course, be disputed. In this case, notwithstanding that the plaintiff, on his direct and redirect examination, asseverated that the property in question was purchased by him with his separate money and that he gave his wife no interest in said property, it will not be doubted that it was within the

legal competence of the trial court to disbelieve his statements favorable to his theory of the case or to hold that their verity was of such a questionable character as to preclude a just conclusion that, in probative force, they were sufficient to overcome the presumption that, during her lifetime, his deceased wife was the absolute owner of an undivided one-half interest in the property which is the subject of this litigation. The plaintiff gave his testimony in the presence of the trial court and thus the latter enjoyed the advantage, not given to courts of review, of observing the manner in which he testified and thus applying a test, in the consideration of his testimony, which is all-important in determining the amount, if any, of credit or weight to which it was justly entitled as in substantiation of his claim respecting the title to the property.

While this court cannot perform the impossible task of weighing the testimony of the plaintiff and thus determining its value in proof of the fact to which it was addressed, we may, nevertheless, call attention to some reasons appearing in his testimony which may well be held, consistently with the limited power and ability of a court of appeal to review questions of fact, to have, at least apparently, justified the trial court in reaching the conclusion that the presumption supporting the title of the defendant's testatrix to an undivided one-half interest in fee simple in the property in controversy was not thus destroyed.

It will be remembered that the plaintiff admitted that his wife delivered to him two United States government bonds, each of the denomination of five hundred dollars, that he sold said bonds for the total sum of one thousand one hundred and forty-five dollars and that of the amount so received he paid one thousand dollars on the indebtedness then still due on the purchase price of the lot. Although he claimed that those bonds were presented to him by his wife as a gift, to be used by him as he felt disposed to use them, still, in view of the fact that the property had been conveyed to the plaintiff and his wife without any evidence in the instrument of conveyance that the wife was not to take the part so conveyed to her as tenant in common, and in view of the further fact that the money received from the sale of the bonds was actually used in paying off the indebtedness on the property, it is not difficult to understand how the court could have

justly concluded that the deceased delivered said bonds to the plaintiff, not as a gift to him, but to be devoted to the specific purpose to which he in fact applied the major portion of the proceeds from the sale thereof, viz.: in part payment of the balance then remaining due on the indebtedness existing against the lot.

The fact of the bringing of the suit under the ''McEnerney Act,'' in the names of himself and wife, to quiet title to the lot in dispute, basing their title on the deed whereby the property was conveyed to them in their joint names, is another circumstance which may well be regarded as a support to the court's conclusion as to the facts. Neither in his complaint in said action nor, presumptively, at the trial thereof, was there any evidence even of a pretense that it was not intended and understood that the wife was not to take under the conveyance as a tenant in common with the plaintiff. Even if it be true, as the plaintiff contends, that, since the real purpose of an action under said act, although partaking somewhat of the nature of a suit to quiet title, is to secure the restoration of destroyed record titles to real property, the decree in that case may not be said to have the effect of establishing the title of the wife to an undivided one-half interest in the property and, therefor, of operating as an estoppel as to such title, still it must be said, as stated, that it to some extent adds support to the presumption upon which the defendant relies.

Another circumstance to which the trial court justly could and no doubt did attach some significance in determining whether the presumption had been removed is the fact that the wife joined in the execution of the note and mortgage for the one thousand dollars secured from the Savings Union and with which the indebtedness on the lot of the loan association was partly extinguished, said transaction occurring at about the same time that the two United States bonds, also, as seen, used in paying off said indebtedness, were delivered to the plaintiff by his wife.

But we need proceed no further in an analysis of the evidence to show that the trial court was not without some apparently strong and substantial reasons for discrediting the testimony in chief of the plaintiff. As before declared, we are not in a position to conclude, under the circumstances of

the case as this court is required to view it, so far as the facts
are concerned, that the trial court, in deciding the question
as to the title to the property, was not justified in rejecting
the testimony of the plaintiff and accepting in lieu thereof
the presumption referred to.

We perceive nothing in the cases of *Bollinger* v. *Wright*,
143 Cal. 292, [76 Pac. 1108], and *Killian* v. *Killian*, 10 Cal.
App. 312, 317, [101 Pac. 806], cited by the plaintiff, which
is in conflict with the conclusion arrived at here. We shall
not review those cases. It is enough to say that, upon read-
ing those cases, it will be found that the circumstances dis-
closed therein are very much different from those shown in
the case at bar.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.