[Civ. No. 9071.   First Appellate District, Division Two.—February 3, 1934.]

DUTTON DREDGE COMPANY (a Corporation), Respondent, v. UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant.

Horace W. B. Smith and George A. Work for Appellant.

Redmon, Alexander & Bacon and Herbert Chamberlin, as *Amici Curiae* on Behalf of Appellant.

Edward J. Lynch for Respondent.

STURTEVANT, J.—The plaintiff commenced an action to recover damages for breach of an alleged contract under the terms of which the defendant undertook to keep the plaintiff covered with compensation insurance. The defendant answered and the action was tried before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has appealed.

After the plaintiff had filed its complaint the defendant commenced an action to obtain a writ of prohibition to restrain the trial court from further proceeding with the trial. The writ was denied. (*United States F. & G. Co.* v. *Superior Court*, 214 Cal. 468 [6 Pac. (2d) 243].) The nature of the complaint of the plaintiff in the instant case is quite fully set forth in that decision.

■ 1. The defendant asserts that the evidence does not support the verdict. It claims that parol contracts of insurance must be clearly and convincingly established in every particular or the courts will refuse any relief. It cites *American C. Co.* v. *Agricultural Ins. Co.*, 12 Cal. App. 133 [106 Pac. 720]. That was an action on an alleged parol contract of insurance. The instant case is one for damages as for a breach of contract. "There is a well-defined distinction maintained in the cases between a parol contract to insure or to issue an insurance policy, and a parol contract of insurance." (*Hartford Fire Ins. Co.* v. *Whitman*, 75 Ohio St. 312 [79 N. E. 459, 460, 9 Ann. Cas. 218].) The instant case falls within the first class and not the second class. Assuming without deciding that the authorities cited by the plaintiff on this point are applicable we will apply the rule to the evidence. In applying the rule contended for the Supreme Court of Pennsylvania quoted with approval as follows: "To constitute a verbal contract of insurance the minds of the parties must have met upon all the essentials of the contract. The testimony must make clear the subject-mat-

ter of insurance, the amount and elements of the risk, including its duration in point of time and extent in point of hazard assumed, the rate of premium, and generally all the circumstances which are peculiar to the contract and distinguish it from every other so that nothing remains to be done but to fill up the policy and deliver it, on the one hand, and pay the premium on the other." (*Benner* v. *Fire Assn. of Philadelphia,* 229 Pa. 75 [78 Atl. 44, 46, 140 Am. St. Rep. 706].) In its brief the defendant does not specify any point on which the minds of the parties did not meet. We have found none in our examination of the record. That the minds of the parties met is evidenced by the fact that almost immediately after the oral agreement was made the first policy was issued. Without further consultations, annually thereafter, others were issued which it is stipulated were similar in form. The insurance in question was workmen's compensation insurance. It is conceded by both counsel that such policies were issued for a term of one year. The amount and elements of the risk were fixed by the Workmen's Compensation, Insurance and Safety Act. By the nature of the risk the entire premium could not be known until a reckoning had after the termination of the policy. Considering all of these circumstances it is quite impossible to say that the minds of the parties did not meet.

As just stated, the defendant presents the point on the theory that the plaintiff's claim rests on a parol contract of insurance. That claim is repeated in other places in the briefs. We think the claim cannot be sustained. The plaintiff did not plead a parol contract of insurance. Neither did it introduce evidence in support of such a claim. Nevertheless the defendant says that the plaintiff could have obtained insurance for one year from any broker, hence it follows that when the plaintiff's agent called on the manager of the defendant company he could not have called for any other purpose than to obtain insurance for a period exceeding one year. That conclusion does not necessarily follow. No business man of large affairs can be presumed to carry his office files with him wherever he goes. Neither will it be presumed that he carries his insurance policies in his pocket. It is therefore important that someone should watch the dates of expiration and advise him when certain policies are about to expire, the amount of the renewal premium, and

to see to it that no lapses occur. Both the plaintiff's complaint and the testimony of its witnesses were addressed directly to that theory and not otherwise. If the jury believed those witnesses, and from its verdict we must assume it did, this court may not disturb the implied finding of the jury in plaintiff's favor. The contract which the plaintiff claims it made with the defendant could have been made with a broker. But, if it had been, it would hardly be claimed that the broker would have become the insurance carrier. We therefore repeat that the plaintiff's cause of action rests on an alleged breach of a parol contract to insure and not on a parol contract of insurance.

2. It is next claimed that the decision by the industrial accident commission that the defendant was not the insurance carrier for the plaintiff at the time of the injury is *res judicata* of the issues involved in this action. The point may not be sustained. The plaintiff does not again tender that issue. On the contrary, it relies on the finding made by the industrial accident commission as being a part of its case.

3. The third point is that the trial court erred in refusing to allow the defendant to introduce evidence to show that the custom and usage in the insurance world was not to enter into oral contracts of compensation insurance. It is not claimed that such evidence would have assisted the court in interpreting any specific clause of the alleged contract. It is claimed that such evidence would have created a circumstance tending to show that the officers of the defendant corporation never made the alleged contract. For that purpose the evidence was not' admissible. In *Barnard* v. *Kellogg*, 77 U. S. 383, at page 390 [19 L. Ed. 987], Mr. Justice Davis speaking for the court said: "The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or in parol, which could not be done without the aid of this extrinsic evidence." In 17 C. J. 508, section 77, the author says: "Where the terms of an express contract are clear and unambiguous they cannot be varied or contradicted by evidence of custom or usage, and this is true whether the contract is written or parol." He cites a large number of cases. Some of those applying the rule to oral contracts are: *Hollingham* v. *Head*, 140 Eng. Rep. Reprint,

1135, 1136; *Stewart & Co.* v. *Exum,* 132 Ga. 422 [64 S. E. 471, 472]; *Lucia* v. *Meech,* 68 Vt. 175, 179 [34 Atl. 695]; *Hodges* v. *Richmond Mfg. Co.,* 10 R. I. 91, 94; *Goodfellow's Exrs.* v. *Meegan,* 32 Mo. 280, 284; *Lane* v. *Bailey,* 47 Barb. (N. Y.) 395, 402; 3 Ency. of Ev. 519. In *Lane* v. *Bailey, supra,* the court said: ''The offer of the defendants to prove that it was the practice of their firm, on extending time, to demand collaterals, was not admissible. The question as to the extent of the pledge depended entirely on the agreement; and this was ascertainable from what was said or done by the parties, at the time, in relation to this particular transaction. No practice of the firm, in relation to their general transactions, could have affected the testimony relative to this particular transaction, one way or the other.'' Furthermore, it was not responsive to the issue. The plaintiff claimed the defendant orally agreed to insure. It did not claim the defendant orally insured.

4. It is next claimed that the alleged contract is within the statute of frauds because it was not to be performed within one year. Among other replies the plaintiff calls to our attention that the basic covenant of the alleged contract was that the defendant agreed to insure the plaintiff and to keep it insured. Continuing, it calls attention to the fact that by another covenant it was agreed the contract could be terminated at any time by either party giving written notice thereof to the other party. Both parties concede that policies for compensation insurance are written for one year. We think the answer is complete, because under such covenants the contract by its terms could have been performed within a few days, not to mention a year. Such contracts do not come within the statute of frauds. (Civ. Code, sec. 1624, subd. 1; 12 Cal. Jur. 857; *Blake* v. *Voigt,* 134 N. Y. 69, 72 [31 N. E. 256, 30 Am. St. Rep. 622].)

5. It is then said that even if there was an oral contract made in the beginning it was merged into the written contract, that is, the first policy that was written. If the oral contract sued upon was an oral contract of insurance the contention would have merit. (Civ. Code, sec. 1625; *Moore* v. *State Ins. Co.,* 72 Iowa, 414 [34 N. W. 183].) But it was a continuing collateral contract to insure and the issuance of a policy for one year was but one step in its performance. *Ferrar* v. *Western Assur. Co.,* 30 Cal. App.

489 [159 Pac. 609], contains nothing to the contrary. In that case the oral contract to keep the owner insured was made by Coleman, a broker. The insurance was written by the Western Assurance Company. There were two separate' contracts to each of which the owner was a party but otherwise the parties were different. No merger was claimed by anyone. As we understand *Harrower* v. *Insurance Co. of North America*, 114 Ark. 279 [222 S. W. 39], another case relied on by the defendant, it is to the effect that the preliminary oral arrangement for insurance is merged in the written policy that follows. In this state that rule is statutory. (Civ. Code, sec. 1625.) True it is, in that case there was involved an oral agreement which the plaintiff claimed obligated the insurance company to keep the owner insured. That agreement by its terms ran for a period of three years. As it was not in writing and did not contain a cancellation clause it was held to fall within the statute of frauds.

6. In its next point the defendant claims that the oral agreement, if any, was canceled during the year 1927 and ceased to exist at that time. On April 22, 1927, the plaintiff was delinquent in the payment of its premiums. On that date the company sent to the insured a written notice that its policy was canceled as of date May 1, 1927. There was evidence that on receipt of the notice the insured paid the delinquent premium and the policy was reinstated. There was also evidence that thereafter another policy was issued and that the premiums thereon were paid as they fell due. Conceding that such facts show the plaintiff breached its contract, it also appears there was evidence that the breach was waived.

7. The next point made by the defendant is that the alleged agreement was breached prior to the date of the accident. It repeats the facts asserted under the point last discussed and also asserts that for the period December 17, 1928, down to the date of the accident, April 20, 1929, no premium was paid. In this connection reference is made to a clause contained in a rider " . . . the assured will pay a deposit premium of one hundred (100) dollars in advance". The defendant says it was not paid and it claims the plaintiff further breached the oral contract to insure. For several reasons we are not inclined to sustain the claim. There is no evidence whatever that $100 was to be paid before a

policy was written, or that a policy for the year 1929 was written, or delivery thereof tendered. We think it is but a fair interpretation that the clause quoted was a statement that such payment and the delivery of the policy were to be concurrent conditions. As no policy was delivered, there was no breach in failing to make the payment.

The plaintiff went to trial on an amended and supplemental complaint. Therein it inserted allegations purporting to plead that it had paid the premium for the year December 17, 1928, to December 17, 1929. If we understand the record correctly at the end of the trial it was stipulated that said premium had not been paid. The evidence shows that the total premiums earned during the year 1928 amounted to $775.36. It does not show what the premiums would have amounted to for the year 1929. ▮ If, as claimed, the defendant breached the contract the plaintiff was entitled to damages, but its recovery should have been limited to the amount which would compensate it for all the detriment proximately caused by the breach. (Civ. Code, sec. 3300.) In the instant case that amount would be the amount of the disbursements the plaintiff was required to pay to its injured employee less the amount of the premium on the policy. (*Hardwick* v. *State Ins. Co.*, 20 Or. 547 [26 Pac. 840, 843]; *Interstate Fire Ins. Co.* v. *McFall*, 114 Va. 207 [76 S. E. 293]; 1 Cooley's Briefs on Insurance, 2d ed., 531.) But the plaintiff was allowed $3,767.81, the total sum of its expenditures, together with interest, and the premium was not deducted.

The judgment is reversed and the trial court is directed to again try the issue as to damages. The defendant will recover its costs on this appeal.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 5, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1934.