[Civ. No. 5759. Third Appellate District.—August 13, 1938.]

LOUIS WEISS et al., Appellants, v. FIRST SAVINGS BANK OF COLUSA (a Corporation), Respondent.

Richard H. Fuidge for Appellants.

Rutledge & Rutledge for Respondent.

THOMPSON, J.—The plaintiffs brought suit to cancel two promissory notes executed and delivered to the defendant bank March 24, 1930, secured by a deed of trust on lot 6, block 27, of the town of Colusa. The first note was for the principal sum of $1,000 and the second one was for $800. It is alleged the plaintiffs received no consideration for the $800 note and that the $1,000 note was fraudulently altered by the defendant after its execution and delivery by inserting in a blank space left in the instrument the provision that the note should bear one per cent interest per month after

default in the payment of any instalment thereof. Findings were adopted and judgment was rendered in favor of the defendant to the effect that plaintiffs take nothing by their action. From that judgment this appeal was perfected.

The plaintiffs are husband and wife. They own lot 6, block 27, in the town of Colusa, where they reside. Mr. Weiss is a merchant in that community. For several years he has been a regular customer of the First Savings Bank of Colusa, where he always maintained an open current account. He frequently borrowed sums of money from that bank on his unsecured notes. For the purpose of paying to Mr. Rupert of Oakland the balance of the purchase price of their Colusa home, the plaintiffs negotiated with the bank a loan of $1,000 to be secured by a trust deed on their home property. At the same time they asked the bank for an additional loan of $800, with which to make repairs upon their home. These loans were obtained from Everett Bowes, who was then an officer of the bank. Both plaintiffs acknowledged the execution of the two notes and of the trust deed, each of which instruments is dated March 24, 1930. The promissory notes are drawn on printed forms which have been used by the bank for several years. Each note was made payable one year from the date thereof ''without grace, *for value received*''. Each note specifically provided for seven per cent interest payable semi-annually, and contained the provision that upon default of any instalment of principal or interest when due the entire note, at the option of the holder thereof, would become due and collectible ''and shall bear interest at the rate of —— per cent per month from the date of the last paid interest until the whole principal and interest shall be paid''. Both plaintiffs testified that the space for the designation of the rate of accelerated interest in case of default was left blank at the time they executed the notes, and that Mr. Bowes told them he would charge them only seven per cent interest. At the bottom of the note for $800 there was printed the following language: ''This note is secured by a,'' following which language there is written these words: ''Deed of Trust, dated March 24, 1930.'' The plaintiffs testified that the last-quoted language was not on the $800 note when they signed it. The trust deed is drawn in the usual form. It creates a lien on lot 6, block 27, of the town of Colusa to secure the payment of the $1,000

note which is specifically mentioned therein. The trust deed provides that it is also executed to secure the payments of all other money loaned or advanced to the plaintiffs by the bank. That clause of the deed reads:

"For the purpose of securing the payment . . . of all sums hereafter paid, laid out, expended or advanced by the said Beneficiary under the terms of this deed of trust, together with interest thereon, *and for the purpose of securing payment of all sums which may be hereafter loaned, paid out, expended or advanced by the said Beneficiary to said Grantor.*"

The plaintiffs testified that they signed both notes and the trust deed, at the request of Mr. Bowes, *in their store;* that neither note then contained the insertion of the one per cent accelerated interest clause, and that the $800 note did not contain the written statement that it was secured by the trust deed. In conflict with the preceding statements Mr. L. A. Mace, the cashier and secretary of the bank, testified that he went to the home of the plaintiffs where he procured the signature of Mrs. Weiss to the $1,000 note and upon the trust deed, and that he then took her acknowledgment to the latter document. He testified to the effect that the $1,000 note did contain the one per cent interest acceleration clause when Mrs. Weiss signed it. His evidence in that regard appears as follows:

"Now with respect to this thousand dollar note, do I understand that you say . . . that note . . . when it was signed by her, was in the form it is now? A. *I think so,* with the exception of the number [of the note]. . . . Q. Do you recall definitely that you had the deed of trust signed by her at the same time? A. I am quite satisfied, sir, in her own home. Q. Well, are you positive about it? A. Yes. Q. You are positive as to both incidents? A. Yes. Q. But you are not positive as to Louis Weiss? A. No, it may have been in his store and may have been in the Bank. Q. Are you sure it was not at the home? A. Quite sure, yes sir. Q. Why is it you are so sure about that; is it because the signature of Louis Weiss is written with a different pen than the signature of Gladys Weiss? A. No, it is because I went down to the residence to get her to sign."

Mr. Bowes, the bank officer with whom the plaintiffs personally negotiated the loans in question, testified at the trial regarding the $800 note:

"It seems to me that this note was made as an advance under the original [$1,000] note. It was what we call an advance note, an advance of money. . . . I think it was just a matter of getting security on $800 that was in the commercial department that one note dated March 24th, 1930, in the amount of $800 was given in exchange for another 800-dollar note that he owed the bank. Well, the $800 was an advance, as I understood him. I considered that it was secured by a deed of trust. I first considered that it was secured by a deed of trust when it was made. I suppose I told Mr. Weiss at that time it was to be secured by a deed of trust. My recollection is I did it. . . . There is a paragraph in the deed of trust that I presume would cover [the reason] why the 800-dollar note wasn't mentioned in the deed of trust. The paragraph I have reference to is in regard to advances. Any advances made by the bank after the making of the deed of trust would be considered to be secured by this deed of trust."

Regarding the plaintiffs' claim that the one per cent per month accelerated interest which appears in the two notes, after default of any payments, was not inserted when they were executed, Mr. Bowes did say that he had no distinct recollection of that fact. But he did testify in rebuttal of that charge, that:

"I think that the one thousand dollars was an actual payment out of the Bank at that time. *I have no recollection of at any time preparing any notes and having them signed by anybody before they were filled out completely. I know of no instance where, if I prepared a note it would not be completely filled in before the party executed it*—unless I overlooked something."

Corroborating the statement of Mr. Mace, who testified that he obtained the signature of Mrs. Weiss to the $1,000 note and trust deed at her home and not at the store, Mr. Bowes testified: "I can't remember bringing these papers over to Louis Weiss at his store, and having him and his wife sign the two papers right there, the two notes and deed of trust."

It is true that Mr. Bowes in giving his deposition which was taken some time before the trial occurred did acknowledge

writing a letter to the attorney for the plaintiffs in which he stated that he was positive he agreed with Mr. Weiss to charge him "a straight 7% interest" and that "I have no remembrance of the 1% being on there before [the instrument was] signed". It is also true that Mr. Bowes said in that deposition that he did not recall that the $800 note contained the statement: "This note is secured by a deed of trust, dated March 24, 1930." The weight to be given to the entire testimony was a matter solely for the determination of the trial judge. It is evident the recollection of Mr. Bowes regarding the details of the transaction was not clear.

Corroborating the evidence given at the trial by Mr. Bowes to the effect that the plaintiffs did receive consideration, in the form of a credit to their bank account, for the $800 note, the loose-leaf ledger containing the account of Mr. Weiss with the bank was received in evidence and clearly shows that on March 7, 1930, a few days after the date which the note bears, he was given credit for $800 according to this record of the bank. The loose-leaf sheet of the bank's "Class E, loans" was also received in evidence, showing that, on March 25, 1930, the day following the date which the notes bear, L. Weiss was charged with a loan of $1,000, and on the following 7th day of April, L. Weiss was also charged with another loan of $800.

In addition to the evidence affirmatively adduced to the effect that the $800 note was executed and delivered for a sufficient consideration, the statute creates a disputable presumption to that effect. Section 1963, subdivision 21, of the Code of Civil Procedure provides that it is presumed: "That a promissory note or bill of exchange was given or indorsed for a sufficient consideration."

Upon the foregoing evidence the court found that both promissory notes were executed and delivered to the defendant in consideration of the respective amounts named therein; that each of the notes, at the time of its execution, contained in writing the provisions for the payment of one per cent accelerated interest per month after default in any payment of principal or interest as therein provided; that neither of the notes was altered fraudulently or otherwise after its execution, and that the $800 note represented an advancement of money paid or credited to the plaintiffs after the execution of the first $1,000 note, and that both notes were

secured by the trust deed in question. Judgment was accordingly rendered against the plaintiffs to the effect that they take nothing by their action.

■ We are of the opinion the findings and judgment are adequately supported by the evidence in every essential respect. It is true that the plaintiffs claimed they solicited the $800 loan "to make improvements on their home", and that they subsequently informed the bank they had decided not to make the improvements and would not require that sum of money. Both of them admitted that they executed the notes. Neither of them claim they ever demanded the surrender of that $800 note. Nearly four years elapsed before they complained of a failure to give them credit for that amount. The officers of the bank had no recollection of the alleged statement that plaintiffs did not want the money represented by the $800 note. Mr. Bowes testified that the $800 note was given, not for the purpose of making improvements on the home, but, on the contrary, that it was executed in lieu of a former unsecured note for the same amount for the express purpose of securing that amount by the trust deed to satisfy the demands of the bank examiners.

The $800 note itself declares that it was given for a valuable consideration. Section 3105 of the Civil Code expresses this presumption of a valuable consideration in the following language:

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration."

If, as Mr. Bowes suggests, the $800 note was given in lieu of a former note for the same amount which was due from the plaintiffs, the former debt furnished adequate consideration for the new note. Section 3106 of the Civil Code provides that: "An antecedent or pre-existing debt constitutes value."

There is ample evidence to satisfactorily show that the plaintiffs did receive full consideration for the $800 note.

■ The burden of showing that the $1,000 note was fraudulently altered contrary to agreement after its execution by inserting therein the acceleration clause providing for one per cent per month interest after default of payments of principal or interest was upon the plaintiffs. They failed to sustain that burden.

It has been held that the filling in of a blank space left in a promissory note at the time of its execution without any agreement with respect thereto does not render the instrument void. If the insertion of the figure specifying the rate of interest is authorized, it will bind the maker. If it is not authorized by the maker of the note it will bear the legal rate of interest, in the absence of an agreement to the contrary, but the note does not thereby become void. (*First Nat. Bank of Oakland* v. *Wolff,* 79 Cal. 69 [21 Pac. 551, 748] ; *Visher* v. *Webster,* 8 Cal. 109; 96 A. L. R. 1104, note.) In 1 Randolph on Commercial Paper, second edition, page 350, section 186, it is said in that regard:

"The rate of interest also may be left blank and filled in by the holder, although the payee can recover in such case no higher rate than that agreed on by the maker."

In the present case it is not a question of what rate of interest the holder of the $1,000 note is entitled to recover from the makers. The issue in this case is whether the $1,000 note was rendered void on account of the alleged fraudulent alteration thereof. The trial court specifically found that it was not altered after it was executed. That finding is controlling on this court under the circumstances of this case. Even though the accelerated rate of interest was inserted in the note after its execution, there is no substantial evidence that it was fraudulently so done. In the absence of an express agreement to the contrary it must be presumed the maker of a note in which a blank space for the rate of interest has been left in the instrument intends thereby to permit the holder thereof to insert in that vacant space a reasonable rate of interest. Under the authorities above cited the note was not rendered void on that account.

In addition to the affirmative evidence which was adduced in this case in support of the findings that the plaintiffs received adequate consideration for the $800 note, and that the $1,000 note was not fraudulently altered, the presumptions that the notes were supported by sufficient consideration and that the defendant is innocent of any fraud or wrong strongly tend to uphold the judgment. The trial judge has the exclusive right to determine the weight and sufficiency of the evidence and the credibility of witnesses. These presumptions which are invoked in the present case were properly considered by the court in determining the issues presented

148

to it. Where there is such a conflict of evidence as exists in this case, these presumptions may become controlling. (*Keating* v. *Morrissey*, 6 Cal. App. 163, 168 [91 Pac. 677]; *Volquards* v. *Myers*, 23 Cal. App. 500, 504 [138 Pac. 963]; *California Trust Co.* v. *Cohn*, 9 Cal. App. (2d) 33, 40 [48 Pac. (2d) 744].)

■ Over the objection of the plaintiffs, the cashier of the bank was permitted to testify that it was the usual custom of the bank to insert in the notes which it accepted a rate of one per cent per month as accelerated interest after default in the payment of principal or interest according to the terms thereof. It is immaterial what the custom of the bank was under such circumstances. The custom or usage of the bank in that regard may not determine the validity of the note. (*Dutton D. Co.* v. *United States F. & G. Co.*, 136 Cal. App. 574 [29 Pac. (2d) 316].) But that evidence was harmless, particularly since the cause was tried by the court sitting without a jury.

There is no merit in plaintiffs' exceptions numbered 2, 3, 4 and 5. The answers of the witness with respect to these assigned errors are harmless. The second exception is covered by the preceding paragraph. The third one calls for a self-evident fact. The cashier was asked if it was *necessarily true* that the note was actually signed on the date which it bears. To this question he replied that it was not necessarily true that it was signed on that date. ■ With relation to the fourth exception the witness was asked what his recollection was regarding the consideration for the $800 note. To this question he replied: ''Well, my recollection was that there was an excess of notes in the commercial department and that [$800 note] was taken to cover part of that.'' That answer is competent. The witness had already testified that the bank examiner had complained of an excess number of unsecured notes, and that it was his recollection the $800 note secured by the trust deed was required in lieu of another unsecured note of the plaintiffs for a similar amount. ■ In the fifth exception the question was asked: ''That matter of securing the notes in the commercial department was discussed with Mr. Weiss at that time?'' To that question the witness replied: ''I can't remember that, *but I imagine it was.*'' It is asserted that answer is a mere conclusion. That is true. But the question did not call for a conclusion. The

witness volunteered that statement. There was no motion to strike the answer from the record. The plaintiffs may therefore not complain of its incompetency for the first time on appeal. The assigned errors in the reception of evidence are without substantial merit.

The judgment is affirmed.

Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 11, 1938, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in this court after decision by the District Court of Appeal is denied; but such denial should not be deemed an approval of the following statement in the opinion of the District Court of Appeal: "In the absence of an express agreement to the contrary it must be presumed the maker of a note in which a blank space for the rate of interest has been left in the instrument intends thereby to permit the holder thereof to insert in that vacant space a reasonable rate of interest."