[Civ. No. 4281. Third Appellate District.—May 26, 1931.]

ROY L. JONES et al., Respondents, v. HARRIS N. DICKERMAN, Appellant.

Dana R. Weller for Appellant.

Leonard E. Thomas for Respondents.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment for the recovery of usurious interest, and from a decree rescinding a promissory note and an order for the payment of an additional bonus exacted for the making of the same loan.

The plaintiffs owned two lots in Cahuenga Place Addition in the city of Los Angeles, which were subject to an encumbrance of $10,000. They were about to be sold under the terms of a trust deed for default of the payment of interest. The plaintiffs planned to borrow sufficient money to pay the mortgage and construct an apartment house on these lots. Roy Jones and Mr. Ward, in company with a broker by the name of Sugarman, interviewed the defendant Harris N. Dickerman for this purpose on March 17, 1927. Mr. Jones testified: "Mr. Ward and I went up to Mr.

Dickerman's office to negotiate a loan for our property that was under foreclosure and about to be sold a few days thereafter, and we talked to Mr. Dickerman about the deal, and he said he would make the deal. . . . We told him we would need possibly $11,000; that the trust deed that was under foreclosure was $10,000, and trustee's fee together with delinquent interest (which) would approximate $1,000. . . . He wanted to know first how long it would be before we would complete the financing that was under way; and we told him possibly ten days; and he said, 'Within two weeks at the most, should cover it.' . . . He said, 'I will loan you $11,000, but it will cost you $2,000. . . . I expect to have my money back in that time, and if I don't get it back in two weeks it will cost you an additional $1,000 a week until it is paid back.' . . . He told us constantly he wanted it to appear not as a loan, but as a sale to protect himself from usury." The plaintiffs protested against this exorbitant charge for the loan. It was, however, necessary to procure the money immediately to save the trust deed from foreclosure sale. They expected to complete other arrangements for financing the enterprise and procure the money with which to return the loan within two weeks. The terms exacted by the appellant were therefore agreed upon. A deed of conveyance and a purported agreement to sell the lots were immediately prepared by Mr. Dickerman in his office. These documents were signed and delivered and $11,000 was paid to the plaintiffs. The property was to be sold at a bank at 11 o'clock that morning. Mr. Jones testified: "We dashed immediately up to the Security Bank at Fifth Street [to redeem the mortgage] and got there about five minutes to 11. The money was paid over."

At the time the loan was consummated, at the instance of the defendant Dickerman, the plaintiffs executed and delivered to him a deed of conveyance to the lots in question, together with a written agreement to sell the lots in consideration of the sum of $11,000. The plaintiffs were unable to return the loan of $11,000 until about the middle of the month of May. After several communications with Mr. Dickerman by telephone, the plaintiffs visited him on May 19, 1927, for the purpose of repaying the loan and procuring a reconveyance of the lots. There was a disagreement regarding the bonus to be paid for the loan. Dicker-

man told the plaintiffs the loan is "going to cost you, in accordance with our contract, $5,500. . . . In this high finance game, you will have to learn to pay big bonuses if you expect to get money". After protesting against this exorbit ' charge, at the recommendation of the broker, the plaintiffs agreed to meet the demands. Mr. Jones testified they were compelled to do so, "as long as he had us in his power". He said, "We told him we could get a $12,000 pay-out mortgage from the mortgage company; . . . we would give him a $2,000 order on the mortgage company, and our personal note for the balance." Thereupon the appellant was paid the amount of the original loan together with the sum of $1,000 interest in addition thereto. A written order upon the mortgage company for the payment of $2,000 additional and a promissory note for $2,500 were signed by the plaintiffs and delivered to the appellant. The appellant and his wife executed and delivered to H. Webb Keedy, the grantee named by the plaintiffs a reconveyance of the lots dated May 19, 1927. At the same time the appellant took the precaution to procure from the plaintiffs a written acknowledgment that they were purchasing the lots from him for the sum of $16,500.

This suit was promptly commenced to recover treble the amount of interest actually exacted for the loan, and to rescind the order for $2,000 and the promissory note for $2,500. The defendant controverted the allegations of usury, and alleged that the transaction constituted an absolute purchase of the property and a resale thereof to the grantee named by the plaintiffs. Upon trial the court adopted findings favorable to the plaintiffs and rendered judgment in their favor for the sum of $3,000. The order for the payment of $2,000 additional and the $2,500 note were declared to be usurious and void. From this judgment the defendant appealed.

The appellant asserts that the findings and judgment are not supported by the evidence. This appeal is without merit. The evidence is conflicting. There is, however, an abundance of evidence to support the judgment. The written statements procured from the owners of the lots declaring that the conveyance and reconveyance of the land were sales and not transfers in the nature of mortgages to secure the loan, appear to be mere subterfuges

to avoid the effect of the Usury Law. There appears to have been no necessity for either of these agreements. They were both executed at the same time with the deeds of conveyance. These instruments appear to confirm the statement of Mr. Jones that the appellant "wanted it to appear not as a loan, but as a sale to protect himself from usury".

Section 2 of the California Usury Law, 1 Deering's General Laws of 1923, page 1384, provides in part: "Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement . . . to pay interest."

Section 3 of the same act provides: "Any person . . . who shall ask, demand, receive, take, accept or charge more than twelve per centum per annum upon the sum of money actually loaned," shall be guilty of a misdemeanor and may be punished therefor by a fine or imprisonment.

This same section further provides: "Every person . . . who for any loan . . . of money . . . shall have paid . . . any greater sum or value than is allowed to be received under the preceding sections, may . . . recover in an action at law against the person . . . who shall have taken or received the same, . . . treble the amount of the money so paid . . . providing such action shall be brought within one year after such payment."

In the present case the sum of $1,000 as interest upon the loan of $11,000 for a period of less than two months, was actually exacted and paid. This payment is usurious. The payment of usurious interest is regarded as having been exacted under restraint. It is not deemed to be a voluntary payment. It may therefore be recovered in an action in *assumpsit*. The plaintiffs are therefore entitled to their judgment for treble damages, amounting to $3,000. (*Babcock* v. *Olhasso,* 109 Cal. App. 534 [293 Pac. 141].)

The order for the further payment of $2,000 and the promissory note for $2,500 were also usurious and void. An action to rescind these instruments as usurious and void was properly joined with the action in *assumpsit* to recover damages for the amount of interest which was actually paid.

A promissory note which includes a bonus in addition to a rate of interest which in the aggregate amounts to

more than twelve per cent per annum upon the sum of money borrowed, is illegal and void so far as the interest and bonus are concerned. (California Usury Law, sec. 2, *supra.*) The court therefore properly rescinded these instruments as void.

■ There can be no question regarding the authority of the law to the effect that a deed which appears to be absolute upon its face, may be shown to have been intended by the parties to be a mere mortgage executed to secure the payment of a debt. (17 Cal. Jur. 735, sec. 41.) There is a multitude of authorities which supports this doctrine. It is true that a deed of conveyance which is absolute in form, may be held to be a mere mortgage for the security of a debt only upon clear and convincing evidence of such intent. (17 Cal. Jur. 756, sec. 58.) Parol evidence is competent to prove that a deed which is absolute in form, was intended by the parties to be a mere mortgage for the security of a debt. (*Couts* v. *Winston,* 153 Cal. 686 [96 Pac. 357]; 27 R. C. L. 212, sec. 13; *Jones Syndicate* v. *Internal Revenue Com.,* 23 Fed. (2d) 833; *Baker* v. *Butcher,* 106 Cal. App. 358 [289 Pac. 236].) In 27 Ruling Case Law, 212, *supra,* it is said: "As a general proposition where the inquiry is whether a contract is usurious it is open to evidence *dehors* the written agreement to show that, though legal on its face, it was in fact an illegal agreement."

■ In spite of the fact that a deed which is absolute on its face was intended by the parties to be a mortgage, must be established by clear and convincing evidence, still, the sufficiency of this evidence is primarily a question for the determination of the trial court or jury. (*Simonton* v. *Los Angeles T. & S. Bank,* 205 Cal. 252, 259 [270 Pac. 672]; *Knaugh* v. *Baender,* 84 Cal. App. 142 [257 Pac. 606]; *Hillwig* v. *Boyer,* 81 Cal. App. 763 [254 Pac. 662].) There is ample evidence in the present case to sustain the judgment upon this issue.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 25, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 23, 1931.