[Civ. No. 12678. First Dist., Div. One. Dec. 5, 1944.]

FRANK S. BROWN et al., Respondents, v. JOSEPH S. CARDOZA et al., Appellants.

W. H. Morrissey and John J. Taheny for Appellants.

Henry F. Boyen and Frank J. Fontes for Respondents.

PETERS, P. J.—This appeal is by the defendants from a judgment determining that they owe plaintiffs $2,099.98 principal and $136.49 interest on a certain promissory note, and owe plaintiffs $350 attorneys' fees; that all of said sums are secured by a deed of trust on certain real property in San Mateo County; and decreeing a foreclosure of the deed of trust. Defendants' defense at the trial was that the promissory note involved provides for an usurious rate of interest. The trial court found contrary to this contention.

There are three couples, with divergent interests, who were actors in the transaction here involved. First, there are the plaintiffs, Frank S. and Ella Brown, husband and wife. They loaned money and took a promissory note secured by a deed of trust. It is claimed that this note provides for an usurious rate of interest. Secondly, there are defendants Harry H. and Cecelia M. Weiner, husband and wife. Mr. Weiner is a

real estate broker. Mrs. Weiner owned the real property upon which the deed of trust was placed. The Weiners negotiated the loan of the money from the Browns, and it is the Weiners who stand to benefit if the transaction is usurious. Thirdly, there are the defendants Joseph S. and Mary I. Cardoza, husband and wife. They purchased the real property owned by Mrs. Weiner.

In September, 1939, Mrs. Weiner owned the house and lot in question, which is located in San Mateo County. The Weiners were trying to sell the property but needed some money to clear off some liens. In that month the Weiners tried to borrow $2,200 from the Browns for this purpose. Mr. Brown did not have that sum available, but did lend the Weiners $1,200. He told the Weiners that his wife would be home in several weeks and that she might be willing to lend the balance. A promissory note payable to Brown and signed by the Weiners in the sum of $1,200 was executed as evidence of this loan, and apparently a deed of trust executed. Mr. Brown denied ever receiving the $1,200 note or the deed of trust. A title insurance policy in favor of the Browns in the sum of $2,500 was executed by a title company, but according to Brown, was never delivered to him. When Mrs. Brown returned she flatly refused to lend any further sums on the property. In the meantime, the Weiners had arranged to sell the property to the Cardozas for $2,700, $200 in cash and $2,500 by promissory note drawing 6½ per cent interest and payable at the rate of $25 per month. Unless the Weiners could raise the balance of the $2,200, apparently this sale would fall through. Weiner pleaded with the Browns for a loan in this amount, but they refused to lend any more money on the property. Finally, Mr. Weiner told the Browns that he stood to make a profit on the deal if he sold the property for $2,700, and offered to split this profit with the Browns if they would make the loan. The Browns agreed then to make the loan. The original promissory note for $1,200 was canceled and, upon the Browns advancing another $1,000, the Weiners closed the deal with the Cardozas. The Cardozas were given a contract of sale. They paid the Weiners $200 in cash and signed a promissory note payable to the Browns for $2,500, the balance of the purchase price. This note was also signed by the Weiners, as makers, and was secured by a deed of trust on the property executed by the Weiners. The note

called for interest at the rate of 6½ per cent per annum, and payments of $25 per month. Thus, when the deal was consummated, the Browns held the Cardoza-Weiner note for $2,500 for their $2,200 loan, secured by a deed of trust. The Cardozas had a contract of sale subject to the $2,500 note. The Weiners held the title subject to the deed of trust and contract of sale, they were comakers of the $2,500 note and they had received $2,400 ($2,200 from the Browns and $200 from the Cardozas) for the property.

The Cardozas made regular $25 monthly payments on the $2,500 note until July of 1942. These payments were made to the Weiners and by them paid over to the Browns. During the early part of 1942 the Browns and the Weiners had several disputes over these payments, the Browns charging that the Weiners were slow in turning these payments over to them. The Browns finally arranged with the Cardozas for the Cardozas to refinance the loan so that the Browns could get out of the transaction. At that time there was a little over $2,100 due on the principal of the $2,500 note. The Cardozas arranged for a loan of $2,200 from the Bank of America, and the money was deposited in escrow. The Browns deposited their $2,500 note, the deed of trust, and a reconveyance, with a title company in escrow. Inasmuch as title stood in the name of the Weiners, a deed from them was necessary to complete the escrow. The title company requested the deed from the Weiners and they refused to execute it. They demanded $2,112.50 from the Cardozas for the deed, that being about the balance owing on the purchase price, and tendered $1,480 to the Browns in full payment of the $2,500 note. This $1,480 was the amount due on the note if the $300 be deducted, and if all the $25 payments made be applied to principal. This demand was refused, and this litigation resulted. The trial court determined that the transaction was not usurious, that $2,099.98 was due on principal on the note and $136.49 interest, that plaintiffs were entitled to $350 attorneys' fees, and costs of suit. The court gave judgment in these sums and decreed foreclosure.

The Weiners contend the transaction was usurious, and this is the only point involved on this appeal.

The Usury Law (Stats. 1919, p.lxxxiii, Deering's Gen. Laws, Act 3757) was adopted as an initiative act in 1919. Under section 1 of that act parties were permitted to contract for

an interest rate not to exceed 12 per cent per annum. Under section 2 any contract to pay more than 12 per cent per annum rendered the entire interest provision null and void. In 1934 article XX, section 22, of the Constitution was amended so as to reduce the maximum permissible rate from 12 to 10 per cent, to exempt certain enumerated classes of lenders from certain of the interest provisions, and to place in the Legislature a limited control over the fixing of interest and other charges made by the exempted groups. The constitutional provision does not contain the many sanctions set forth in the Usury Law. ■ It is now well settled, however, that the adoption of the constitutional provision did not repeal all of the provisions of the Usury Law. Insofar as the constitutional provision is inconsistent with the statute, it is of course supreme, but, insofar as they are consistent, the provisions of the Usury Law, including the penalties, are still in effect. (*Penziner* v. *West American Finance Co.,* 10 Cal.2d 160 [74 P.2d 252] ; *Layport* v. *Rieder,* 37 Cal.App.Supp.2d 742 [94 P.2d 96].)

■ The first question to be determined is whether or not the $300 exacted by the Browns in excess of the $2,200 loaned should be considered interest. The Browns argue that the real essence of the transaction was that the Cardozas made a note payable to the Weiners who then discounted it with the Browns for $300 less than its face value, and contend that the usury laws do not apply to such a transaction, citing such cases as *Vaughan* v. *Peoples Mortgage Co.,* 130 Cal.App. 632 [20 P.2d 335] ; *McCarty* v. *Mellinkoff,* 118 Cal.App. 11 [4 P.2d 595] ; *Baker* v. *Butcher,* 106 Cal.App. 358 [289 P. 236] ; *O. A. Graybeal Co.* v. *Cook,* 111 Cal.App. 518 [295 P. 1088].) This is not what the trial court found, nor what the actual transaction was. The court found that as one transaction the Browns agreed to lend $2,200 to the Weiners and that the profits from the sale of the property were to be split. The evidence shows without contradiction that the "splitting of profits" was the amount offered by the Weiners and accepted by the Browns for making the loan, plus 6½ per cent interest. The Constitution (art. XX, § 22) prohibits any device whereby the lender by charging a "fee, bonus, commission, discount or other compensation" will receive more than 10 per cent per annum for any loan of money. (See, also, § 2 of the Usury Act.) A plan whereby the lender refuses to make a

loan unless the borrower will "split" profits is obviously a device whereby the lender demands for the loan a consideration in addition to interest. The so-called "split" in profits is nothing more nor less than a bonus for the loan. The law is well settled in most jurisdictions, including California, that where there is a loan of money to be compensated for by a share in earnings, income or profits, in lieu of or in addition to interest, in determining whether the transaction is usurious the share of earnings, income or profits must be considered as interest. (*Jameson* v. *Warren*, 91 Cal.App. 590 [267 P. 372]; *Rice* v. *Dunlap*, 205 Cal. 133 [270 P. 196]; *Richlin* v. *Schleimer*, 120 Cal.App. 40 [7 P.2d 711]; *Wilbur* v. *Griffins*, 56 Cal.App. 668 [206 P. 112]; see annotation 51 A.L.R. 552.) For this reason we are of the opinion that the $300 added to the amount loaned by the Browns must be considered as a bonus for the loan and therefore, interest.

This does not necessarily determine that the transaction was usurious. The Browns, under article XX, section 22, of the Constitution, lawfully could have charged 10 per cent on $2,200, the amount actually loaned. If the note had provided for 10 per cent interest, and if it had further provided for $25 a month payments on the $2,200 loaned, according to the tables furnished by appellants, it would take 160 months to pay the full indebtedness, during which time $1,781.61 would have been paid in interest and $2,200 on principal. Thus, according to this table, the Browns lawfully could have charged $1,781.61 interest. The actual transaction was a note for $2,500, of which $300 was interest, at 6½ per cent interest, payable at $25 a month. According to appellants' tables, it would take 145 months to pay off such a note, during which time $1,110.24 would be paid as interest and $2,500 on the principal. If the $300 bonus be added to the interest payments, it will be seen that the total interests paid on the transaction would have been $1,410.24, which is $371.37 less than lawfully could have been charged. It is thus apparent that the transaction, viewed in this light, even with the $300 considered as interest, was not usurious.

Appellants, while now recognizing that the transaction was not usurious if considered as a loan of $2,200, contend that it should not be so considered, but should be treated as two separate loans—one for $1,200, the so-called first loan, and one for $1,000 calling for 6½ per cent interest and a $300 bonus. The appellants contend that if the transaction be so

considered the interest exacted on the $1,000 loan exceeded by $67.50 the amount that could lawfully have been charged. This conclusion is arrived at by treating each $25 payment as a payment *pro tanto* on the interest and principal of the "two" obligations.

The difficulty with this argument is that it is contrary to the facts. The transaction that is under attack is one in which the Browns loaned $2,200 and exacted a $300 bonus. The original $1,200 note was executed by the Weiners alone. The note here involved was for $2,500, and was executed by the Cardozas and the Weiners. The original note for $1,200 was canceled. Upon such cancellation it disappeared from the case. The new note completely superseded the first note. It is quite significant that the Weiners when they made their tender of $1,480 did not treat the transaction as if it were two transactions. They did not tender the interest on the "first" note. They treated the transaction as one transaction, and contended that all interest was void and should be considered as applied to principal. We are of the opinion that the question under consideration is whether the loan of $2,200 was usurious, and that such loan must be considered as one transaction. So considered, the Browns did not exact more than 10 per cent interest, and the transaction was not usurious.

■ Independently of the arguments in relation to the rate of interest, appellants urge that the transaction violated both sections 1 and 2 of the Usury Act.

Section 1 provides that the rate of interest for the loan or forbearance of money shall be 7 per cent, but that it shall be competent for the parties to contract for 12 per cent "in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing." It is contended that it was not so expressed. Section 2. of the Usury Act prohibits the taking or receiving of more than 12 per cent interest for the loan or forbearance of money, and it is further provided that "nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest. . . ." It is urged that the promissory note pro-

vided for a $300 bonus, which must be considered as interest, and that the appellants were required to pay interest on interest in violation of the quoted section. We have been referred to no cases that held that, where not more than 10 per cent interest is charged, the portions of the two sections quoted apply so as to render the entire interest provisions void if they violate the quoted portions of the sections, but do not violate the interest rate provisions. We have grave doubts that, if a transaction is not usurious, so far as the interest charge is concerned, the portions of sections 1 and 2 above quoted were ever intended to render void all interest provisions if perchance the agreement to pay more than 7 per cent is not clearly expressed, or if interest is charged on interest without a clear agreement to that effect. The two portions of the sections quoted seem to embody a rule of construing ambiguous documents, rather than compelling a court to void all interest simply because the contract may be ambiguous. However that may be, this transaction violated neither of these provisions. It is the Weiners who are complaining of the alleged usury. The Cardozas simply bought property for $2,700 and gave a note for $2,500 and cash of $200. They got exactly what they bargained for. As between the Weiners and the Browns, the transaction consisted of two checks—one for $1,200 and one for $1,000 given by the Browns to the Weiners, and the promissory note evidencing the debt for $2,500. The Weiners knew, as anyone examining the papers constituting the contract would know, that they were paying 6½ per cent interest, plus $300 interest. Those papers disclosed that the Weiners were paying interest on the $300 interest. The papers constituting the entire transaction disclosed these facts clearly and without ambiguity. For this reason the two sections in question were not violated.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied January 4, 1945.