[S. F. No. 19343.   In Bank.   Feb. 21, 1957.]

W. E. WILLIAMS, Respondent, v. GLEN E. REED et al., Defendants; ROBERT M. CAIRNS et al., Appellants.

Athearn, Chandler & Hoffman, F. G. Athearn, Leigh Athearn, Theodore P. Lambros, Carlson, Collins, Gordon & Bold and Roscoe E. Jordan for Appellants.

Herron & Winn and John Wynne Herron for Respondent.

CARTER, J.—This is an appeal by defendants Arvidson, Carroll and Cairns, makers (with Reed who does not appeal) of a $30,000 promissory note, from a deficiency judgment, after sale under a securing chattel mortgage, in favor of plaintiff, payee of the note.

Two negotiable notes, one for $30,000, bearing 5 per cent interest, and the other for $10,000, were dated June 14, 1950. The first became due in 60 days and the second on December 14, 1950, and named all the makers as such with plaintiff as payee. They recited that ''I'' promise to pay the principal and interest. The notes were secured by a chattel mortgage executed by Reed covering property owned by him. After this case was reversed on an appeal by plaintiff from a summary judgment for all the makers but Reed, who defaulted (*Williams* v. *Reed*, 113 Cal.App.2d 195 [248 P.2d 147]), plaintiff dismissed the portion of the action pertaining to the $10,000 note and the trial proceeded on the $30,000 note.

The $10,000 note was given as a "bonus" for the $30,000 loan, and was, therefore, usurious, hence the action thereon was dismissed. This action was commenced to foreclose the chattel mortgage and for a deficiency judgment for the balance due; the amount realized at the foreclosure sale ($687) was credited on the note. The judgment awarded interest and attorney's fees (provided for in the note) on the $30,000 note. Soon after the maturity of the notes, and on October 12, 1950, an agreement with reference to the notes was made between plaintiff and Reed and his wife. Before the instant action was commenced, plaintiff obtained judgment against Reed on that agreement, but the judgment has not been paid or satisfied.

The main defenses of defendants-makers, except Reed, were that the agreement made October 12, 1950, between Reed and his wife and plaintiff, wherein plaintiff agreed to accept and Reed to pay $35,000 on October 28, 1950, to discharge the two notes which had in effect extended the time for payment two and one-half months on the $30,000 note, was a novation—a substitute for the notes, thus exonerating them; that they were accommodation makers only, having received no value, and under section 3110 of the Civil Code,[1] were liable only as sureties, and the October 12th agreement freed them from liability because it changed the obligation (see Civ. Code, §§ 2819, 2822) ; that the judgment for plaintiff in his action on the agreement achieved the same results and constituted an election of remedies; that the action will not lie because of failure to comply with section 726 of the Code of Civil Procedure.[2] The trial court found against all of these contentions.

Several matters are settled by the former decision on appeal. (*Williams* v. *Reed, supra,* 113 Cal.App.2d 195.) Reserving the question of whether defendants (other than Reed) were accommodation makers and entitled to the application of surety law which was said to be a factual question, it was held that the October 12th agreement showed no intent

---

[1] "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." (Civ. Code, § 3110.)

[2] "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter. . . ." (Code Civ. Proc., § 726.)

on its face for novation releasing such defendants; that the judgment on that agreement, there being no execution, was not an election which estopped plaintiff; that the security of the chattel mortgage was not waived to the prejudice of those defendants to render them not liable; that even if the agreement was a novation as to Reed it would not release the other defendants; and that the right of action was not controlled by section 726 of the Code of Civil Procedure. The opinion of the court closed with the statement that it did not intend to foreclose the determination of any issue of fact including novation.

Defendant Cairns (the other defendants filed no brief but join in Cairns' brief) contends that he was an accommodation maker, and under the laws of suretyship as applied to him, the October 12th agreement changed the obligation and released him from liability.[3] Assuming an accommodation maker is in such position, the basic question is whether there is sufficient evidence to support the trial court's finding that he and the other defendants were not accommodation makers because they received value. It will be recalled that under section 3110 of the Civil Code, *supra,* a maker is not an accommodation one unless he did not receive value for signing the instrument, and defendant asserts that the value must have been from the consideration for the note—from the payee (plaintiff) rather than from Reed, the accommodated maker, for lending his name to the instrument (citing Britton, Bills and Notes (1943), p. 365; 11 C.J.S., Bills and Notes, § 742). Accepting the foregoing premise as correct, it appears that the evidence is sufficient as to all the defendants.

In the first place it should be observed that the defendants appear as ordinary joint makers of a negotiable note and thus "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." (Civ. Code, § 3105.) This clearly means that everyone who appeared to be a party to the instrument (defendants appeared as makers here) was

---

[3] There is a conflict of authority as to whether an accommodation maker of a negotiable instrument is in the position of a surety and has all the defenses available to a surety (see *Mortgage Guarantee Co.* v. *Chotiner,* 8 Cal.2d 110 [64 P.2d 138, 108 A.L.R. 1080]; Britton, Bills and Notes, p. 1121 et seq.; 2 A.L.R.2d 260).

presumed to have received value from the loan of money made by the plaintiff payee; a presumption of consideration arose (*Weiss* v. *First Sav. Bank*, 28 Cal.App.2d 140, 146 [82 P.2d 45, 83 P.2d 35]). Among the presumptions also is the rebuttable one "That a promissory note or bill of exchange was given or endorsed for a sufficient consideration" (Code Civ. Proc., § 1963, subd. (21)), and "That there was a good and sufficient consideration for a written contract" (Code Civ. Proc., § 1963, subd. (39)). ■ "[T]he writing [promissory note] itself carries the presumption of consideration which is evidence to be weighed against this defendant's testimony. With this conflict, the finding of the trial court that a consideration passed should not be disturbed." (*Rodabaugh* v. *Kauffman*, 53 Cal.App. 676, 679 [200 P. 747]; see also *Moore* v. *Gould*, 151 Cal. 723, 726 [91 P. 616]; *Pacific Portland Cement Co., Consol.* v. *Reinecke*, 30 Cal.App. 501 [158 P. 1041]; *Ellington* v. *Freer*, 111 Cal.App. 651 [295 P. 857].) Hence it follows that there was a presumption that defendants all received value from the plaintiff's loan of money. ■ Moreover, it may be inferred from the evidence that defendants received some benefit from the loan.

Defendants and Reed had known each other for some time prior to the execution of the note and were enjoying business relations. Reed agreed to assist them in organizing various projects and foundations in which they were interested. Those projects were beneficial to defendants, and Reed purported to be able to obtain funds for them from eastern capital. Defendant Cairns testified that plaintiff was assisting him in organizing Cairns' Agricultural Research Foundation to study and develop plant nutrition and soil in which he had long been interested; that the foundation was not philanthropic; that he would realize gains from it by selling products from the research; that he had no funds to finance such a foundation, but Reed told him he could obtain them from the East and advance the project for him; that he would install an irrigation system on Reed's ranch for the latter's services in obtaining finances for the foundation; that he wanted Reed to get the $30,000 for his financial difficulties so he could continue performing for his interests in the foundation; that he said nothing when he signed the note concerning the capacity in which he signed it, indicating that he was an ordinary comaker. Plaintiff testified (Cairns also) that before Cairns signed the note he telephoned Reed to see if time enough was allowed for repayment and if it

was all right, indicating Cairns' interest in Reed receiving the loan to benefit Cairns.

Reed testified by deposition, "There is no question but that all three of these men—and I am referring to Arvidson, Carroll and Cairns—were to benefit, either directly or indirectly from the $30,000.00 loan; is that correct? ANSWER: That is right"; that an automobile Reed got from Cairns was in part payment for his services; that he had "obligations" on his ranch that must be met and the ranch was to go into the defendants' foundations; that "In addition, prior to June 14, 1950, I had formed for Carroll and Arvidson and the company, which is known as West Coast Industrial Engineers. This operating company was set up with Carroll and defendant Arvidson as officers and managers. In addition, on or about June 14, 1950, I had created an agricultural research foundation for defendant Robert M. Cairns and also an operation company for this foundation. Defendant Cairns and his wife were officers in said organization. These organizations were designed so that a profit would be made by defendants Carroll, Arvidson and Cairns in accordance with their duties as officers of organization. At the time of the execution of the subject notes, there was yet no work to be done by me to get said foundation and operating company in operation. In addition, money was needed to get said organization into operation. On June 14, 1950, I had an interest in a valuable farm at Walnut Creek, which interest I had acquired by means of a written contract of sale. It was agreed by the defendants and myself that said farm would become an asset of the foundation and operating company. However, on June 14, 1950, at the time said notes were executed I was in default on the contract of sale and money was borrowed by all of us from plaintiff Williams to make payments due on the farm."

The foregoing is sufficient from which the trial court could infer that all the defendants realized or were to receive value from the loan of the money and thus were not accommodation makers. There were real benefits to be received by defendants from the loan transaction, rather than a mere motive on their part of wanting to help Reed. There is evidence to the contrary to the effect that the $30,000 was only for Reed's personal benefit but that merely creates a conflict.

At least with the presumption of valuable consideration present, the evidence which tends to support it sufficiently contradicts the contrary evidence. In *Gardiner* v. *Holcomb*,

82 Cal.App. 342, 353 [255 P. 523], it is said: "While a party's intent may be to aid a maker of a note by lending his credit, if he seeks to accomplish thereby legitimate objects of his own and not simply to aid the maker the act is not for accommodation." (See also *Irwin* v. *Colburn,* 56 Cal. App. 41 [204 P. 551].)

Defendants assert there was an "election of rights" by plaintiff in suing and obtaining judgment against Reed on the October 12th agreement, recording an abstract of the judgment, and having a writ of execution issue (no levy of the writ was made and nothing was realized from it) which forecloses the instant action of foreclosure on the notes and chattel mortgage; they concede that the October 12th agreement was not, as found by the trial court, a novation. That contention in part was answered by the former appeal in this case when the judgment had been obtained but no execution had been issued. The court there said: *"Was the reduction of Reed's October, 1950, obligation to judgment an election which estops plaintiff from maintaining the present action?* If the October, 1950, agreement was not a novation and did not release Reed's comakers on the original notes, it is difficult to see how the mere reduction of Reed's October obligation to judgment (a judgment not yet satisfied in whole or in part) could give that obligation a different effect. In October Reed promised to pay plaintiff a certain sum of money. In November the court found that Reed for a valuable consideration promised to pay plaintiff that sum of money, and decreed that plaintiff have judgment against Reed for that amount of money. That judgment does not import any new factor into the situation. It affords plaintiff a better muniment of title to Reed's October promise to pay. It does not modify plaintiff's promise to *accept that amount of money, and nothing but money* (no mere added muniment of title to Reed's promise) in satisfaction of the original notes of June, 1950.

"The parties agree that upon the basis of the record before us the obligations of the defendants as comakers of the original notes were joint and several. Each note was in the form of a promise made in the singular number and executed by each of the defendants. In such a case there is a presumption that the promise is joint and several (Civ. Code, §§ 1660, 3098, subd. (7)).

"Reed's comakers claim that in such a case the bringing of an action against one of the makers (Reed) without join-

ing the others, and obtaining judgment against him alone, bars the plaintiff from later suing any of the others in respect to that obligation. They cite cases from other jurisdictions, none from California. Those cases are not applicable. Three of them involved joint, not joint and several, obligations: *Fleming* v. *Ross* (1906), 225 Ill. 149 [80 N.E. 92, 8 Ann. Cas. 314]; *Morgan* v. *Edgar* (1929), 107 W.Va. 536 [149 S.E. 606]; and *Fedderson* v. *Goode* (1944), 112 Colo. 38 [145 P.2d 981]. The remaining case, *Taylor* v. *Sartorious* (1908), 135 Mo.App. 23 [108 S.W. 1089], involved a joint and several obligation. The court recognized that joint and several obligors may be sued separately but held that those later sued get the benefit of a judgment favorable to the obligor first sued, to the extent that he successfully defended. ▆ It is true in most jurisdictions, including California, that *joint* obligors upon the same contract are indispensable parties. They may not be sued separately [citations]. ▆ If judgment is obtained in a separate action against one, it bars an action against the others. [Citation.] ▆ When the obligation is *joint and several*, it is not nonjoinder to sue one alone [citations]. The same is true of an action against one or more and less than all of a number of persons jointly and severally obligated as tort feasors. In such a case the judgment obtained against one is not a bar to an action against the remaining joint and several obligors. '*Nothing short of satisfaction in some form constitutes a bar . . .*' (*Grundel* v. *Union Iron Works*, 127 Cal. 438, 442 [59 P. 826, 78 Am.St.Rep. 75, 47 L.R.A. 467].) [Citations.] That being so in respect to joint and several tort obligors under a contract. . . . ▆ Accordingly, but for the possible effect of section 726 of the Code of Civil Procedure, a mere judgment against Reed in a separate action against him upon the original notes would not preclude plaintiff from bringing subsequent actions against Reed's comakers.

"But plaintiff's former action was not brought upon the original notes. It was brought against Reed upon his separate agreement of October, 1950, to which none of the other note makers was a party." (Emphasis added; *Williams* v. *Reed, supra,* 113 Cal.App.2d 195, 203.) The added facts that a writ of execution was obtained and the judgment was recorded add nothing to the picture; defendants did not change their position in reliance thereon. In fact, if anything they were possibly benefited by a partial exhaustion

of rights against Reed and, as said on the former appeal, quoted *supra*, ''Nothing short of satisfaction in some form constitutes a bar'' against an action against the comakers.

In connection with this same argument defendants rely on section 726 of the Code of Civil Procedure, *supra*, and say the right of action for a deficiency after sale under the chattel mortgage, which was the only action that could be brought, was lost because of the judgment on the October 12th agreement, and the issuance of execution, and recording of the judgment. This also is in part answered on the former appeal, the court stating: *''Has the plaintiff waived the security of the chattel mortgage to the prejudice of the rights of Reed's cosigners and thereby lost his right to proceed against them?* Reed's cosigners direct attention to section 726 of the Code of Civil Procedure which declares that '[t]here can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter,' and prescribes the circumstances under which a deficiency judgment may be obtained and the manner and method of determining the amount of such judgment. They then claim that plaintiff has disabled himself from resorting to the security of the chattel mortgage and has thereby prevented himself from getting a deficiency or personal judgment against them.

''This came about, they say, because the October, 1950, agreement with Reed operated as a novation which cancelled the original notes and as a necessary consequence extinguished the chattel mortgage. This argument lacks merit for the reason, as we have seen, no novation occurred by the mere execution of the October, 1950, agreement.

''They further contend that 'even if no novation had been entered into, and the plaintiff had brought this action . . . against Reed alone on the notes and recovered judgment, the plaintiff would have been only an unsecured judgment creditor, and the lien of the mortgage would have been lost.' Whether or not such a suit by plaintiff reduced to judgment would have lost him the mortgage seems immaterial. He did not bring an action on the 'notes.' He brought an action on the October, 1950, agreement.

''Moreover, plaintiff's former action against Reed was upon an agreement susceptible to the interpretation that Reed confessed judgment while waiving as to himself the benefit of prior resort to the mortgage security and yet keeping the

mortgage alive and available for the benefit of plaintiff and Reed's cosigners. The prohibition against Reed's making any such waiver at the time of or in connection with the making of the loan and the execution of the mortgage (Civ. Code, § 2953) signifies authority in Reed later to waive the rights or privileges conferred upon him by section 726 of the Code of Civil Procedure. (See *Salter* v. *Ulrich,* 22 Cal.2d 263, 266-267 [138 P.2d 7, 146 A.L.R. 1344].) If after obtaining judgment against Reed in the former action, plaintiff had *levied* execution against the mortgaged property, *bought* that property upon the execution sale, and *were now relying upon the title thus acquired* (as was done by the secured creditor in the Salter case) plaintiff might find that he had destroyed the mortgage security or had estopped himself from claiming any mortgage interest in that property and thereby be precluded from obtaining a deficiency judgment against Reed's cosigners. But plaintiff has not done that. There is nothing in the record before us to indicate that he has even taken out a writ of execution to enforce the judgment in the former action." (Emphasis added; *Williams* v. *Reed, supra,* 113 Cal. App.2d 195, 205.) We fail to see how the mere recordation of the judgment and issuance but not levy of execution changes that reasoning.

Finally, defendants claim that the $10,000 and $30,000 notes were part of the same transaction (contrary to the trial court's findings) in which the plaintiff gave only $30,000 and the $10,000 was usurious[4] interest; that hence the 5 per cent interest provided for in the $30,000 note should not have been allowed by the judgment because the whole transaction is tainted with usury. There can be no question that all the evidence including plaintiff's is one way, namely, that the $10,000 note was given as a "bonus" or "finder's fee" for the loan of $30,000 and nothing else, and was part of the loan transaction. Plaintiff makes no real contention that the bonus would not constitute usurious interest (see *In re Fuller,* 15

"'The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be 7 per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 per cent per annum.

"'No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money, goods or things in action.'" (Cal. Const., art. XX, § 22; see also Stats. 1919, p. LXXXIII, as amended.)

Cal.2d 425, 434 [102 P.2d 321]; *Anderson* v. *Lee*, 103 Cal. App.2d 24 [228 P.2d 613]; *Brown* v. *Cardoza*, 67 Cal.App.2d 187 [153 P.2d 767]; *Pacific Finance Corp.* v. *Crane*, 131 Cal.App.2d 399 [280 P.2d 502]). ▮ When the transaction violates the usury law the intent of neither of the parties is material (*Martin* v. *Kuchler*, 212 Cal. 536 [299 P. 52]) nor is it material that the borrower rather than the lender took the initiative in the transaction (*Martin* v. *Ajax Const. Co.*, 124 Cal.App.2d 425 [269 P.2d 132]). ▮ Plaintiff claims, however, that since he dismissed his action on the $10,000 note and the 5 per cent interest specified in the $30,000 is not usurious, he is entitled to the latter interest as awarded by the judgment. In *Moore* v. *Russell*, 114 Cal.App. 634, 641 [300 P. 479], the court said: "The note in controversy having provided for the payment of $750 bonus and a flat interest at seven per cent was plainly usurious. Thus tainted the plaintiff lost the right to claim or collect interest in any amount." (Emphasis added; see also *Paillet* v. *Vroman*, 52 Cal.App.2d 297, 305 [126 P.2d 419]; *Jones* v. *Dickerman*, 114 Cal.App. 357, 361 [300 P. 135]; *Haines* v. *Commercial Mortg. Co.*, 200 Cal. 609, 617, 621, 622 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; 91 C.J.S., Usury, §§ 56, 58.) Since there is a single transaction and the whole was tainted by the usury, it can make no difference that plaintiff dismissed the portion of his action on the $10,000 note.

The judgment, insofar as it awards interest, is reversed; in all other respects it is affirmed. Each party shall bear his own costs on this appeal.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.