In re **PAJARO DUNES RENTAL AGENCY, INC.,** Debtor.

**PAJARO DUNES RENTAL AGENCY, INC., a California Corp., dba Monterey Bay Caterers,** Plaintiff,

v.

**Laurence L. SPITTERS, Trustee for eight irrevocable trusts of children of Laurence L. Spitters; Laurence Spitters, an individual,** Defendant.

**Bankruptcy No. 91–53976–ASW.**
**Adv. No. 92–5006.**

United States Bankruptcy Court, N.D. California.

June 24, 1992.

Scott O. Smith, Richard G. Avila, Jerry A. Hager, Smith & Smith, Dennis B. Arnold, Gibson, Dunn & Crutcher, San Jose, Cal., for Spitters.

Craig K. Welch, Welch, Olrich & Mori, San Francisco, Cal., for debtor.

James D. Sumner, San Jose, Cal., for Porter Dry Properties, Ltd., a minority shareholder of PDRA.

## DECISION

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

This matter came before the Court on the motion by creditor and defendant Laurence L. Spitters, Trustee, and Laurence L. Spitters, individually ("Spitters"), to dismiss the Fifth Claim For Relief in this adversary proceeding brought by the debtor, Pajaro Dunes Rental Agency ("PDRA"). PDRA's Fifth Claim For Relief seeks to have Spitters' deed of trust on PDRA's real property declared void. PDRA opposed Spitters' motion, and filed a counter motion for summary judgment.

The Court held a hearing on April 16, 1992.

For the reasons set forth herein, the Court grants PDRA's motion and denies Spitters' motion.

### I. Factual Background

The following facts are undisputed. PDRA is a California corporation. Hare, Brewer & Kelley, Inc. ("HBK") is a California corporation and PDRA's majority shareholder, owning 87.5% of PDRA's stock. William Kelley and Ryland Kelley ("the Kelleys") are the sole shareholders of HBK. Ryland Kelley is the sole member of the Board of Directors of PDRA and the President of PDRA.

On May 1, 1989, PDRA and HBK executed a $1 million note in favor of Spitters. The Kelleys, in their personal capacities, guaranteed the obligation of PDRA and HBK to Spitters by executing a deed of trust on an office building owned by the Kelleys. On or about January 29, 1990, the maturity date of the note was extended to April 1, 1990.

PDRA and HBK defaulted on the note on or about April 1, 1990. On or about May 1, 1990, the Kelleys transferred ownership of their office building to PDRA by grant deed, making PDRA the successor in interest to the Kelleys.

On November 2, 1990, Spitters brought a single state court action against HBK, PDRA, and the Kelleys for judicial foreclosure of the deed of trust, and for recovery of the amounts due on the note and the guarantees.

On July 1, 1991, PDRA filed a Chapter 11 bankruptcy case. On October 7, 1991, Spitters accepted a stipulated personal judgment against HBK and the Kelleys for $1 million plus interest and attorneys fees, which represents the total obligation owed by HBK, PDRA and the Kelleys to Spitters. The action against PDRA, including the foreclosure action, remains stayed pursuant to 11 U.S.C. § 362.

## II. Issue

The question before the Court is whether Spitters' acceptance of a personal judgment against HBK and the Kelleys for the entire obligation effected a waiver of Spitters' security interest in the office building in accord with California's "one-action rule", codified in Section 726 of the California Code of Civil Procedure ("Section 726").[1]

The precise issue presented by the facts of this case is one of first impression under California law. The Court holds that Spitters has waived his security interest in PDRA's office building.

## III. Discussion

A. *Section 726 Governs Spitters' Action to Recover Amounts Due Under the Promissory Note.*

1. *The Language of Section 726*

■ Under California law, there is only one form of action for the recovery of any debt secured by a mortgage or deed of trust on real property. That remedy is foreclosure. Under this rule, whenever an obligation is secured by a mortgage or, as in this case, a deed of trust, the creditor cannot sue the debtor on the note until the security has been exhausted through foreclosure. *Walker v. Community Bank*, 10 Cal.3d 729, 733, 111 Cal.Rptr. 897, 518 P.2d 329 (1974) ("*Walker*").

■ The plain language of Section 726 dictates a result in favor of PDRA in this case. Section 726 provides, in pertinent part,

(a) There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action *shall be in accordance with the provisions of this chapter.* (emphasis added).

The chapter in which Section 726 appears sets forth the procedures for selling the security, determining the amount of the deficiency, if any, and entering a personal judgment against a debtor for the amount of the deficiency. The Supreme Court of California has interpreted and applied Section 726 to mean that if the creditor obtains a money judgment against the debtor before foreclosing on the security under the procedures set forth in the statute, Section 726 may be invoked as a sanction against the creditor resulting in a waiver of the security. *Walker*.

In the pending case, Spitters obtained judgment on the debt before foreclosing on the security. That judgment is not in accordance with the provisions of Section 726. Under the most straightforward and literal reading of the statute and the supporting cases, Spitters is deemed to have waived his security, even though PDRA may remain liable on the note.

2. *Spitters' Argument*

■ Spitters argues that his acceptance of a stipulated judgment against HBK and the Kelleys does not violate the one action rule because: (1) PDRA's protection under

---

1. The parties do not dispute, and for purposes of these motions, the Court will assume PDRA's continuing liability under the note. Generally, co-makers owe an independent duty to the payee which is not discharged until payment in full is made, or express release is granted. *See, e.g., In Re I.A. Durbin, Inc.,* 49 B.R. 528, 532 (Bankr.S.D.Fla.1985), *aff'd. on other grounds,* 62 B.R. 139 (S.D.Fla.1986).

Section 726 remains completely viable; (2) Spitters brought only one action in state court, which was for foreclosure, and has obtained no judgment against PDRA; (3) there are multiple obligors under the note, which prevents the debt from merging into the judgment as to PDRA. Although these arguments have some surface appeal, the unambiguous language of Section 726, the relevant case law, and policy considerations underlying Section 726 support a holding in favor of PDRA in this case.

Spitters argues that the decision in *Williams v. Reed*, 48 Cal.2d 57, 307 P.2d 353 (1957) (*"Williams"*) is controlling. There, multiple debtors executed two promissory notes secured by a chattel mortgage. Soon after the maturity of the notes, the creditor and one of the debtors made a second agreement for the payment of the debt (an extension). When the debt was still unpaid after the passing of the extended date, the creditor sued based upon the second agreement and obtained a judgment. In defense to the subsequent suit for foreclosure of the chattel mortgage, the debtors asserted that Section 726 (which applied to chattel mortgages as well as real property at the time the case was decided) barred the foreclosure action.

The court held that Section 726 did not bar the foreclosure action because the first action was not brought upon the original notes, but rather upon a separate subsequent agreement. *Williams*, 48 Cal.2d at 65, 307 P.2d 353. Therefore, *Williams* holds that Section 726 does not bar a foreclosure action when a previous action to collect a debt was based upon an agreement separate from the one evidenced by the secured notes. In this case, there was no action by Spitters on a separate agreement. Spitters did not bring an action on the guarantees before his foreclosure action. He brought only a single action seeking foreclosure *and* recovery of amounts due under the promissory note. Thus *Williams* does not control.

### B. *Application of Walker*

Seventeen years after *Williams*, the California Supreme Court decided *Walker*. As the leading case with respect to the sanction aspect of Section 726, *Walker* guides this Court's analysis of the present dispute between Spitters and PDRA.[2]

In *Walker*, Diversified Enterprises, Inc. ("the corporation") obtained a loan from Community Bank ("the bank") and in return gave the bank a promissory note secured by a chattel mortgage, and a promissory note secured by a trust deed on real property. Upon default by the corporation, the bank foreclosed on the chattel mortgage only, and obtained a deficiency judgment. After the commencement of the foreclosure action, but before the deficiency judgment was entered, the corporation sold the real property securing the second note to Walker. When the bank attempted to foreclose on the real property, Walker commenced a quiet title action against the bank, arguing that Section 726 prohibited the bank's second action.

The court held that Walker could invoke the sanction aspect of Section 726 on the basis that, by not foreclosing on the real property security in the action brought to enforce the debt, the bank had elected its remedy and waived the real property security. *Walker*, 10 Cal.3d at 741, 111 Cal. Rptr. 897, 518 P.2d 329. The court held that although the corporation had waived the affirmative defense aspect of Section 726, the bank automatically triggered the sanction aspect by failing to exhaust all the security before obtaining a deficiency judgment, and that the sanction takes effect regardless of whether the security is owned by the debtor or his successor in interest. *Id.* at 740, 111 Cal.Rptr. 897, 518 P.2d 329.

PDRA is in a situation similar to that of Walker. Spitters did not foreclose in the action brought to enforce the debt (at least

**2.** *See Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 212 (9th Cir.), *cert. denied*, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981) (construing Cal.Civ.Proc.Code § 877 and holding that, when construing California law, federal courts in California must seek the rule to which the California Supreme Court would adhere if it were confronted with a similar situation).

not by the time the judgment against HBK and the Kelleys was taken). HBK and the Kelleys, like the corporation in *Walker*, waived the affirmative defense aspect of Section 726 by stipulating to a personal judgment. Spitters automatically triggered the sanction aspect of Section 726 when he, like the bank in *Walker*, failed to exhaust the security before obtaining a judgment on the note. This sanction is effective regardless of the fact that PDRA is a successor in interest to the Kelleys, just as Walker was the successor in interest to the corporation.

However, the precise issue for this Court in the present case is whether *Walker* should control when, as here, the successor in interest (PDRA) is liable on the note. The parties have cited no case addressing this specific issue. Nor has the Court found any controlling authority directly on point. Thus, the Court must examine the language of Section 726, and the policy rationales behind Section 726 (as expressed in *Walker* and its progeny) to decide whether the fact that PDRA is liable on the note should prevent PDRA from asserting the sanction aspect of Section 726 in this case.

The *Walker* court found the policy rationales behind Section 726 to be: (1) preventing multiple suits against the debtor; (2) testing the value of the security through competitive bidding; and (3) forcing the creditor to look to the security as the primary fund from which to pay the debt. *Walker*, 10 Cal.3d at 736, 111 Cal.Rptr. 897, 518 P.2d 329. Application of these considerations to Spitters' action in this case results in a decision in favor of PDRA.

Spitters' action would not result in multiple suits against the debtor because he has filed only one action against PDRA. Thus Spitters' action does not raise an issue of the possibility of multiple suits against the debtor. As for the second rationale, the value of the security has not been tested through competitive bidding (*e.g.*, at a foreclosure sale). However, that is the consequence of PDRA's filing its Chapter 11 petition, not any action by Spitters. Therefore, that factor is neutral. The third rationale is clearly threatened by Spitters' action. By taking a stipulated judgment against HBK and the Kelleys, Spitters is not forced to look to the security as the primary fund from which to collect the debt. In this Court's view, this factor weighs heavily in favor of a ruling for PDRA.

The importance of the "primary fund" policy factor is illustrated by *In Re Kristal*, 758 F.2d 454 (9th Cir.1985) ("*Kristal*"). In *Kristal*, the debtor defaulted on a note secured by real and personal property. The creditor brought one action to foreclose the security and collect the debt, as Spitters did in this case. The creditor obtained *both* a money judgment and a judgment for foreclosure. After attempting to execute the money judgment against the debtor's other property (property which had not been pledged as security), the creditor sought to foreclose on the personal property security. The debtor filed a petition under Chapter 7 of the Bankruptcy Code and the Chapter 7 trustee opposed the foreclosure.

The bankruptcy court, the Bankruptcy Appellate Panel, and the Ninth Circuit all held that the creditor had waived its security interest when it "deviated from the statutory prescriptions of C.C.P. § 726" by taking a personal judgment and attempting to execute it against the debtor's other assets. *Kristal*, 758 F.2d at 455.

Although this Court does not have evidence before it that Spitters has attempted to *execute* his judgment against HBK and the Kelleys, Spitters clearly has deviated from the procedures set forth in Section 726 by taking personal judgments before foreclosing on the security as the "primary fund" from which to satisfy the debt.

There would be a danger of the *Kristal* scenario occurring in this case if the Court were to rule for Spitters. Spitters now holds a judgment against the Kelleys and HBK. Spitters could, while the stay under 11 U.S.C. § 362 protects PDRA, execute that judgment against other assets of the co-makers, *before foreclosing on the security*. Then, in the event that there were no other assets, or they were insufficient to

satisfy the judgment, Spitters could foreclose. Spitters would be able to search for assets not protected by the stay, while having the option of foreclosing on the real property at some future time. This is exactly what Section 726 is designed to prevent.[3]

### C. Application of Post–Walker Case Law

The parties are in dispute over the applicability of *Pacific Valley Bank v. Schwenke*, 189 Cal.App.3d 134, 234 Cal. Rptr. 298 (1987) ("*Schwenke*"). Spitters argues the case is inapposite because the debtor in *Schwenke* was placed in a worse position by the creditor's action (unprotected by the security), whereas in this case PDRA is in exactly the same position after the creditor's action. PDRA argues that *Schwenke* is applicable because it held that a co-maker of a note is entitled to assert the protection of Section 726.

*Schwenke* involved two obligors, Schwenke and O'Brien, who were partners in a business engaged in property development. Schwenke and O'Brien signed a promissory note which was secured by deeds of trust on two properties owned by O'Brien and one property owned by Schwenke. After a series of refinancing transactions, wherein the lender reconveyed O'Brien's two deeds of trust without Schwenke's knowledge or consent, the lender filed suit against Schwenke to recover the amounts still outstanding. Schwenke, as a co-maker, raised Section 726 as a defense to the lender's suit. The *Schwenke* court held that a co-maker could assert the sanction aspect of Section 726.

Because *Schwenke* addresses the issue of whether a co-maker is entitled to assert Section 726, the *Schwenke* court's legal analysis is useful to this Court's decision. The Sixth District Court of Appeal examined a long line of case authority and concluded that "the 'one-action' rule plainly applies to all notes secured by deeds of trust in California, *without regard to whether the mortgagor and the debtor are one and the same.*" *Schwenke*, 189 Cal. App.3d at 142, 234 Cal.Rptr. 298 (emphasis added). In this case, Spitters argues that since PDRA (the current owner) is also liable on the note (*i.e.*, is a debtor), the one action rule is not violated by his taking of a personal judgment against the other debtors. *Schwenke* supports the opposite conclusion, *i.e.*, that the one action rule applies in exactly the same manner as under *Walker*, even though PDRA is a maker of the note secured by the real property.

The holding of *Schwenke* is also consistent with this Court's finding with respect to the "primary fund" policy rationale discussed above. If a co-maker of a note secured by real property could not assert Section 726, either as a sanction or as an affirmative defense, then the secured creditor would always be able to avoid the strictures of Section 726 by taking a judgment against the co-makers personally, and then executing that judgment against the assets of the co-makers before foreclosing on the security. In such circumstances, the security would not be the primary fund from which to satisfy the debt. Such a result would undermine very seriously the third policy rationale underlying Section 726.

A recent case from the California Supreme Court following *Walker* also supports the holding of this Court in favor of PDRA. In *Security Pacific Nat. Bank v. Wozab*, 51 Cal.3d 991, 275 Cal.Rptr. 201, 800 P.2d 557 (1990), the bank held a deed of trust to secure the debtors' guarantees of payment of the line of credit given by the bank to the debtors' business. The debtors and their business had demand deposits and savings accounts at the bank. When the bank became concerned that the business might file for bankruptcy, the bank set off the amounts in the demand deposit and savings accounts against the amount outstanding on the line of credit. The debtors argued that the bank had waived its security interest and that they were re-

---

**3.** Section 726 provides parties to real estate secured transactions with a clearly defined statutory procedure for collecting debts secured by real property. Strict application of the statute and the sanction for violating it draws a "bright line" which creates predictability for lenders and borrowers in such transactions.

leased from liability on the guarantees because of the application of Section 726 to the bank's improper set-off.

The court held that the debtors remained liable on the guarantees (*Id.* at 1002, 275 Cal.Rptr. 201, 800 P.2d 557), but that the bank had waived its security interest (*Id.* at 1001–02, 275 Cal.Rptr. 201, 800 P.2d 557). The court stated that, "When a secured creditor violates section 726(a) by obtaining judgment on the debt before foreclosing the security, he is deemed to have waived the security." *Id.*

The fact that HBK and the Kelleys *stipulated* to a personal judgment does not change the result here. In *O'Neil v. General Sec. Corp.*, 4 Cal.App. 4th 587, 5 Cal. Rptr.2d 712 (1992) (*"O'Neil"*), a group of judgment creditors brought an action for foreclosure of a trust deed and damages for fraud, negligent misrepresentation, and breach of contract. The parties reached a settlement whereby a stipulated personal judgment was entered against the debtors. Neither the stipulation nor the judgment itself excepted from the judgment any of the causes of action asserted in the complaint. The underlying settlement agreement did, however, purport to preserve the creditors' right to pursue non-judicial foreclosure.

The Fourth Appellate District held that, *notwithstanding the settlement agreement,* the taking of a personal judgment by stipulation without first exhausting the security through foreclosure resulted in a waiver of the secured creditors' right to foreclose. The creditors in *O'Neil,* like Spitters in this case, had brought only one action, *inter alia,* seeking to foreclose on all their security. The critical fact was that a personal judgment was taken before the security was exhausted. *O'Neil,* 4 Cal. App. 4th at 602, 5 Cal.Rptr.2d 712. The creditors in *O'Neil,* like Spitters in this case, accepted a stipulated personal judgment without excepting any of the causes of action alleged in the complaint.[4] Thus, under the rationale in *O'Neil,* Spitters has forfeited his security interest.

---

**4.** This Court does not reach the issue of whether the result in this case would be different if

### IV. Conclusion

Spitters' motion to dismiss or, in the alternative, for summary judgment on the Fifth Claim for Relief in this adversary proceeding is denied. PDRA's counter-motion for summary judgment on its Fifth Claim for Relief is granted. Spitters is deemed to have waived his security interest in the office building.

Spitters had, in accepting the personal judgments, expressly reserved his right to foreclose.