Filed 4/9/14: pub. order 4/25/14 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| DKN HOLDINGS LLC, | |
|     Plaintiff and Appellant, | E055732, E056294 |
| v. | (Super.Ct.No. RIC1109512) |
| WADE FAERBER, | O P I N I O N |
|     Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. John Vineyard, Judge. Affirmed.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Paula M. Harrelson for Plaintiff and Appellant.

Callahan & Blaine, Edward Susolik and Michael S. LeBoff for Defendant and Respondent.

## I.  INTRODUCTION

Plaintiff DKN Holdings LLC (DKN) appeals from a judgment of dismissal after the trial court sustained, without leave to amend, defendant Wade Faerber's demurrer to DKN's complaint for monies due under a commercial lease.  (Code Civ. Proc., § 430.10 subd. (e).)[1]  DKN also appeals from a postjudgment order awarding Faerber $54,817.50 in attorney fees as the prevailing party in the action on the lease, claiming the fee award is unreasonable.  The two appeals have been consolidated for oral argument and decision.

In this appeal, we affirm the judgment of dismissal and the attorney fee award.  In case No. E056497, DKN appeals a postjudgment order dismissing another defendant, Matthew Neel, whose default was entered after he was served with the complaint but failed to appear.  In that appeal, we affirm the order dismissing Neel.

## II.  BACKGROUND

### A.  *Synopsis*

By its complaint in the present action, DKN, a lessor on a commercial lease, sued Faerber and Neel, two of three colessees, for unpaid rents and other monies due under the lease.  In a prior action, DKN obtained a money judgment for over $3 million against the third colessee, Roy Caputo, following a court trial on the merits for monies due under the lease.  The lease provides that colessees shall be "jointly and severally responsible" to comply with its terms.  Although DKN sued Faerber and Neel in the prior action, along

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

with Caputo, DKN dismissed them without prejudice before trial and judgment. The judgment against Caputo is apparently unsatisfied.

The question on the present appeal from the judgment of dismissal is whether the judgment against Caputo in the Caputo action bars DKN's claims against Faerber and Neel in the present action. The trial court concluded that the judgment against Caputo bars DKN's claims in the present action, and we agree. We conclude that the complaint does not and cannot state a cause of action against Faerber and Neel for monies due under the lease, because DKN's claims against Faerber and Neel in the present action are barred by the claim preclusion aspect of the res judicata doctrine.

B. *The Lease Agreement*

In June 2004, Faerber, Neel, and Caputo agreed to lease retail space in a Murrieta shopping center known as Margarita Square from the center's co-owners and lessees, DKN and CDFT Limited Partnership (CDFT). The parties signed a "Standard Retail/Multi-Tenant Lease-Net" lease with a 10-year term. Section 48 of the lease provides that "multiple parties" signing the lease as lessors or lessees "shall have *joint and several responsibility*" to comply with its terms. (Italics added.) For purposes of the present demurrer, Faerber and DKN do not dispute that Caputo, Faerber, and Neel were jointly and severally liable to DKN under the lease.

Faerber is an orthopedic surgeon, and Caputo is also a physician. Faerber, Caputo, and Neel intended to use the leasehold to build and operate an "upscale" fitness and training center under the trade name Evolution Elite Sports and Fitness Club. In

3

September 2004, the lease was amended to increase the size of the leasehold from approximately 15,000 square feet to approximately 22,000 square feet, and the rent was increased. Around March 2007, Faerber and Caputo acquired Neel's interest in the business and orally agreed to indemnify Neel for any liability he may incur for monies due under the lease.

C. *The First Action on the Lease*

In June 2007, Caputo sued DKN, seeking to rescind or cancel the lease and for money damages based on fraud, breach of fiduciary duty, and other grounds or causes of action (the Caputo action).[2] In a nutshell, Caputo alleged that DKN failed to make material disclosures concerning the leasehold and breached its obligations under the lease, resulting in the failure of the fitness club. Among other things, Caputo claimed DKN failed to disclose that (1) a streambed near the shopping center was required by law to be planted with native vegetation that could not be trimmed and that would block views to the leasehold, and (2) a center median would have to be constructed on Murrieta Hot Springs Road, reducing and inhibiting access to the shopping center.

In the Caputo action, DKN and CDFT cross-complained against Caputo, Faerber, and Neel for monies due under the lease. Caputo was served with DKN's first amended cross-complaint, but Faerber and Neel were not served. Following a June 2011 court trial and statement of decision on the complaint and first amended cross-complaint, Caputo

---

[2] The Caputo action, *Roy Caputo, M.D. v. DKN Holdings LLC et al.*, was filed in the Riverside County Superior Court and was assigned case No. RIC474609.

4

was denied any relief on his complaint, and DKN/CDFT was awarded over $2.8 million in money damages on its cross-complaint against Caputo. Faerber and Neel were dismissed as (unserved) cross-defendants following the entry of the judgment against Caputo. Thereafter, DKN/CDFT did not move to add Faerber or Neel to the judgment against Caputo as additional judgment debtors. (§ 989.)

D. *The Present Complaint Against Faerber and Neel*

On June 1, 2011, shortly before the statement of decision was issued in the Caputo action, DKN filed the present action against Faerber and Neel, asserting two cause of action. The first cause of action, for breach of the lease, names both Faerber and Neel and seeks the same money damages that DKN was awarded against Caputo in the Caputo action. The second cause of action, for breach of an oral indemnity agreement against Faerber, alleges DKN is entitled to the benefit of Faerber's March 2007 oral agreement to indemnify Neel for any liability Neel may incur under the lease. The claim alleges Faerber "is now obligated to DKN for Neel's non-payment of rent on the oral contract for indemnity."

E. *Faerber's General Demurrer*

Faerber demurred to the complaint on the ground it failed to state a cause of action because the judgment against Caputo barred DKN's claims against Faerber and Neel for monies due under the lease. (§ 430.10, subd. (e).) Faerber claimed that DKN was improperly splitting its single cause of action or primary right for monies due under the lease into two separate suits, the first against Caputo in the Caputo action and the second

5

against Farber and Neel in the present action.  In opposing the demurrer, DKN claimed that joint and several obligors, such as Caputo, Faerber, and Neel, may be sued in separate actions under California law.

The trial court sustained Faerber's demurrer, without leave to amend, and entered judgment in favor of Faerber.  In a postjudgment order, Faerber was awarded $54,817.50 in attorney fees.

## III.  DISCUSSION/FAERBER'S GENERAL DEMURRER

A.  *Standard of Review on Demurrer*

We independently review the court's order sustaining, without leave to amend, Faerber's general demurrer to DKN's complaint in the present action.  (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp*. (2013) 214 Cal.App.4th 1520, 1526.)  "We first review the complaint de novo to determine whether it contains facts sufficient to state a cause of action under any legal theory.  [Citation.]  ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]"'  [Citation.]  'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]'  [Citation.]"  (*Estate of Dito* (2011) 198 Cal.App.4th 791, 800.)

6

B.  *The Judgment Against Caputo in the Caputo Action Bars DKN's Claims Against Faerber and Neel in the Present Action*

DKN claims Faerber's demurrer was erroneously granted and the complaint states a cause of action.  DKN argues that, under California law, joint and several obligors, such as Faerber, Neel, and Caputo, may be sued in separate actions.  As we explain, DKN is mistaken.  Joint and several obligors may not be sued in separate actions when, as here, the claim or claims against them are barred by a prior judgment under the claim preclusion aspect of the res judicata doctrine.

"'As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.]  The doctrine "has a double aspect." [Citation.]  "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.  [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates'" in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.]'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)

The purpose of the doctrine of res judicata is "'to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation.' [Citations.]" (*Brinton v. Bankers Pension Services, Inc.* (1999) 76

7

Cal.App.4th 550, 556.) "''"The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]"' [Citation.]" (*Boeken v. Philip Morris USA, Inc.*, *supra,* 48 Cal.4th at p. 797.) The party asserting the preclusive effect of a prior judgment bears the burden of establishing it. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529.)

The present case concerns the claim preclusion aspect of res judicata, not the issue preclusion or collateral estoppel aspect. We independently conclude that all three elements of the res judicata doctrine apply, and that the judgment in the Caputo action bars DKN's claims against Faerber in the present action.

First, it is undisputed, and the judicially noticed records from the Caputo action show, that DKN was a party to the Caputo action and the action resulted in a final judgment on the merits against Caputo. As a party to the Caputo action, DKN is bound by the judgment in that action, and res judicata may be invoked against DKN based on the final judgment. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 985 [res judicata operates "only against those who were parties, or in privity with parties, to that prior litigation and who are thus bound by the resulting judgment."].)

Furthermore, Faerber and Neel may invoke res judicata against DKN in the present action based on the final judgment in the Caputo action, even though Faerber and

8

Neel were not parties to the Caputo action. "The party seeking the benefit of the [res judicata] doctrine . . . need not have been a party to the earlier lawsuit." (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 985.) "Only the party *against whom* the doctrine [of res judicata] is invoked must be bound by the prior proceeding." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.)

In addition, the present action against Faerber and Neel is based on the same claims that DKN asserted against Caputo in the Caputo action. In California, the primary rights theory applies in determining whether two proceedings involve identical causes of action, for purposes of claim preclusion. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.) Under the primary rights theory of code pleading, which has long been followed in California, "'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] . . .

"'As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation.] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a

9

single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." [Citation.]'" (*Mycogen Corp. v Monsanto Co., supra,* 28 Cal.4th at p. 904.)

DKN's claims against Faerber and Neel are based on the same primary right—the right to recover monies due under the lease—that DKN asserted against Caputo in the Caputo action. The first cause of action against both Faerber and Neel for their failure to pay monies due under the lease is based squarely on DKN's right to recover monies due under the lease. Similarly, DKN's second cause of action against Faerber (only) seeks the benefit of Faerber's oral agreement to indemnify Neel for any liability Neel may incur under the lease. As such, the second cause of action is based on DKN's primary right to recover monies due under the lease, even though it seeks to vindicate that right by the alternative remedy of obtaining the benefit of Faerber's agreement to indemnify Neel. (*Boeken v. Philip Morris USA, Inc., supra,* 48 Cal.4th at p. 798 ["under the primary rights theory, the determinative factor is the harm suffered."].)

DKN argues that because joint and several obligors are jointly *and severally, or individually*, liable on an obligation, a claim against each of them constitutes a *separate claim.* DKN is mistaken. Under the primary rights theory, and for purposes of applying the res judicata doctrine, the claims are identical. (*Lippert v. Bailey* (1966) 241 Cal.App.2d 376, 382 [Fourth Dist., Div. Two] ["A single cause of action may not be maintained against various defendants in separate suits as the plaintiff has suffered but one injury."].)

10

Relying on a passage from the California Supreme Court's 56-year-old decision in *Williams v. Reed* (1957) 48 Cal.2d 57, 65 (*Williams*), DKN argues that a judgment against one joint and several obligor does not foreclose a later action against another joint and several obligor on the same obligation. The *Williams* court observed: "It is true in most jurisdictions, including California, that *joint* obligors upon the same contract are indispensible parties. They may not be sued separately [citations]. If judgment is obtained in a separate action against one, it bars an action against the others. [Citation.] When the obligation is *joint and several*, it is not nonjoinder to sue one alone [citations]. The same is true of an action against one or more and less than all of a number of persons jointly and severally obligated as tort feasors. In such a case the judgment obtained against one is not a bar to an action against the remaining joint and several obligors. '*Nothing short of satisfaction in some form constitutes a bar . . . .*'" (*Ibid.*, quoting *Grundel v. Union Iron Works* (1900) 127 Cal. 438, 442.)

Based on this passage from *Williams*, DKN argues that because Caputo, Faerber, and Neel are jointly *and severally* liable for the unpaid rents and other monies due under the lease, the judgment against Caputo does not bar DKN's identical claims against Faerber and Neel in the present action. We disagree. As the trial court noted in sustaining the demurrer, the passage from *Williams* is "wrong" and incorrectly states the law—to the extent it may be construed as allowing an obligee, such as DKN, to obtain separate judgments *in separate actions* against joint and several obligors, based on the same claims. *Williams* did not address the issue presented here: whether a final

11

judgment on the merits against *one* joint and several obligor bars a subsequent action and judgment against *additional* joint and several obligors, on the same obligation, by the same claimant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 ["cases are not authority for propositions not considered."].) Thus, *Williams* does not support DKN's position.[3]

To be sure, courts are generally authorized to render separate judgments, in the same action *or in separate actions*, against joint and several obligors. (*Melander v. Western Nat. Bank* (1913) 21 Cal.App. 462, 474-478 [construing former § 414, now § 410.70 & §§ 578, 579, as authoring courts to enter separate judgments in separate actions against joint and several obligors];[4] see also *Grundel v. Union Iron Works, supra,* 127 Cal. at p. 442 [joint and several tort feasors may be sued in separate actions].) But even when joint and several obligors are not required to be sued in the same action (see §§ 410.70, 379, 389) when, as here, a final judgment on the merits has been rendered in

---

[3] DKN similarly relies on a 1918 Georgia appellate court case which, like *Williams*, did not address the effect of the res judicata doctrine of a prior judgment on successive actions on the same claims against joint and several obligors. (*Johnson v. Georgia Fertilizer & Oil Co.* (1918) 21 Ga.App. 530 [94 S.E. 850].)

[4] Section 410.70 provides: "In an action against two or more persons who are jointly, jointly and severally, or severally liable on a contract, the court in which the action is pending has jurisdiction to proceed against such of the defendants as are served as if they were the only defendants."
Section 578 provides: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves."
Section 579 provides: "In an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

12

one action against a joint and several obligor, res judicata will bar the assertion of identical claims against other joint and several obligors, in a subsequent action, by parties bound by the judgment in the prior action.

DKN also relies on the following passage from Witkin: "If the defendants are both jointly and severally liable, joinder is not mandatory but permissive, and the plaintiff, although he or she has but one cause of action, may sue one defendant first and another later. Despite the theoretical incongruity, the plaintiff is not barred in the second action because the defense of res judicata is available only *when both the cause of action and the parties are the same*." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 65, p. 124, italics added.) Like the passage from *Williams, supra,* 48 Cal.2d at page 65, the trial court rejected this passage from Witkin as an incorrect statement of the law,[5] and we agree it is incorrect. The passage from Witkin mistakenly indicates that defendants in the current proceeding must have been parties to the prior proceeding, in which a final judgment on the merits was obtained on the same claims, in order to invoke res judicata in the current proceeding, but this is not the law. As discussed, only the party *against whom* res judicata is invoked must have been a party to the prior action and bound by the judgment in that action. (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 985.) It is not necessary that the party invoking the doctrine in the prior proceeding have been a party to the prior proceeding, or bound by the judgment in that proceeding. (*Ibid.*)

---

[5] The trial court commented that the quoted passage from Witkin was "one of those classic examples of Witkin referring to and relying on a case that doesn't support the theory published in Witkin." (Underlining omitted.)

13

C. *DKN's Partnership Claim is Unavailing*

DKN further claims its complaint states a cause of action because the trial court in the Caputo action found that Faerber, along with Caputo and Neel, were "partners" on the lease. DKN is mistaken. In its statement of decision in the Caputo action, the trial court did not find that Caputo, Faerber, and Neel were partners, and even if it had, the finding would not be binding on Faerber or Neel because they were not parties to the Caputo action. In generally describing the lease, the trial court in the Caputo action loosely referred to Caputo, Faerber, and Neel as "partners" who "wanted to lease and build out premises for a fitness club . . . ."

In any event, DKN argues Faerber's "partnership liability" under the lease "creates an independent basis" for holding him responsible in the present action on the lease, apart from his joint and several liability as a colessee. DKN reasons that California's Uniform Partnership Act of 1994 (Corp. Code, § 16100 et seq.) permits a plaintiff to sue partners in separate actions. Though the Uniform Partnership Act of 1994 provides that "an action" may be brought against the partnership "and any or all of the partners in the same action *or in separate actions*" (Corp. Code, § 16307, subd. (b), italics added), this statutory authorization to sue partners in separate actions does not apply when, as here, the claims asserted in the subsequent action are barred by res judicata principles.

D. *DKN's Misrepresentation Claim is Unavailing*

Based on facts neither alleged in the complaint nor judicially noticed, DKN claims Faerber misled and deceived DKN to dismiss Faerber from the Caputo action, without

14

prejudice. DKN argues that Faerber has "unclean hands" because, near the outset of the Caputo action, the attorney representing Caputo, Faerber, and Neel falsely represented to DKN that, shortly after the lease was signed in June 2004, the three colessees, together with DKN's representative, Bill Dendy, amended the lease to exclude Faerber and Neel as colessees and to provide that Caputo was the sole lessee. Dendy was the managing partner of CDFT, the co-owner of the shopping center, and DKN's colessor on the lease with Caputo, Faerber, and Neel.

DKN represents that Dendy, who died in 2005, was the only person on DKN's side of the transaction who had personal knowledge of whether the lease was amended to exclude Faerber and Neel as lessees, as Faerber claimed. The lease was not well documented, and there were ambiguities and omissions in the documents constituting the lease. DKN claims it did not serve Faerber or Neel with its amended cross-complaint in the Caputo action and instead dismissed Faerber and Neel, without prejudice, based on their attorney's representation that the lease was amended to exclude them. Now, however, DKN argues that the evidence presented at trial in the Caputo action, including Faerber's testimony, shows Faerber's counsel misrepresented the facts, and that Faerber and Neel were in fact intended to be bound by the lease.

DKN's argument is unavailing. Even if the complaint were amended to allege that Faerber negligently or intentionally misled DKN regarding his and Neel's status as colessees under the lease, the complaint would not state a cause of action against Faerber or Neel. (*Estate of Dito, supra,* 198 Cal.App.4th at pp. 800-801 [when the facts pleaded

15

do not state a cause of action, we determine whether the plaintiff has demonstrated a reasonable possibility that the defect can be cured by amendment].)  DKN does not argue that Faerber is equitably estopped from asserting that the present action against him is barred by res judicata principles, and even if it did, it could not state facts sufficient to support the *reasonable reliance* element of equitable estoppel.  (See *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 187-188 [reasonable reliance element of equitable estoppel is question of fact for the trier of fact unless reasonable minds could reach only one conclusion based on the evidence].)[6]

DKN was represented by counsel in the Caputo action, and DKN dismissed Faerber and Neel from that action before discovery was completed and the matter proceeded to trial.  In the absence of documentation showing the lease had been amended to exclude Faerber and Neel as colessees, DKN did not reasonably rely on any oral misrepresentation by Faerber or his counsel that the lease had been amended, shortly after it was signed, to exclude Faerber and Neel as colessees.

IV.  DISCUSSION/THE ATTORNEY FEE AWARD

The trial court awarded Faerber $54,817.50 in attorney fees as the prevailing party on DKN's complaint pursuant to a fee provision in the lease.  (Civ. Code, § 1717.)  The award was around 30 percent less than the $78,177.50 sum Faerber sought for defending

---

[6] In the trial court, DKN argued Faerber was judicially estopped from arguing in the present action that he should have been a party to the Caputo action, because in the Caputo action he took the inconsistent position of claiming he was not intended to be a lessee and had to be dismissed from the Caputo action.

16

the complaint. DKN claims the $54,817.50 award is unreasonably high, and constitutes an abuse of the trial court's discretion. We find no abuse of discretion.

A. *Background*

In support of the $78,177.50 attorney fee motion, Faerber's lead counsel, Edward Susolik, submitted a declaration, together with invoices to Faerber, showing the hours billed and the hourly rates charged to Faerber in connection with representing him in the present action. The hours billed were recorded contemporaneously with the hours worked. Susolik had over 20 years of experience as a litigator and trial lawyer, had handled "numerous complex real estate litigation matters," and charged $525 an hour. Two attorneys who assisted Susolik had 12 and 13 years of experience, and were billed at $395 an hour. A paralegal's time was charged at $155 per hour.

In Susolik's experience, the hourly rates charged were consistent with the hourly rates charged by other attorneys and paralegals "in the community" with similar skill and experience. Susolik's law firm, Callahan & Blaine, was located in Orange County. The law firm representing DKN, Prenovost, Normandin, Bergh & Dawe, was also located in Orange County.

The total number of hours billed was 167.2. The invoices show the attorneys billed for time incurred in preparing the demurrer and the attorney fee motion, attending the hearings on the motions, reviewing and analyzing the complaint and the rulings in the Caputo action, arranging for and attending a one-day mediation at Judicial Arbitration and Mediation Services, preparing "a comprehensive mediation brief," engaging in

17

further settlement discussions, conducting "factual investigation and legal research relevant to the claims and defenses" in the present action, and preparing and serving a motion for sanctions (§ 128.7), which was not filed. The attorneys also prepared and presented a demand letter to DKN's counsel, with case citations, demanding the dismissal of the complaint because its claims were barred by "the rule against splitting causes of action." The letter warned that DKN and its attorneys would be subject to sanctions if the complaint was not dismissed. By its complaint, DKN was seeking over $5.2 million from Faerber for monies due under the lease.

In opposing the attorney fee motion, DKN argued the amount sought was "grossly excessive for the filing of a single demurrer" based on a simple, straightforward legal theory. In addition, the community for determining counsel's compensable hourly rates was "the Riverside County Area," and the rates charged, an average of $460 an hour, was excessive for Riverside County.

Further, there was "no need" for Faerber to hire new counsel in the present action, and the fees counsel billed in order to "get up to speed" on the Caputo action were unnecessary and duplicative of the work performed by the attorney who represented Faerber, Neel, and Caputo in the Caputo action. DKN also asked the court to subtract 16.55 hours billed for preparing the sanctions motion because the motion was not filed and was prepared and served "for the purpose of intimidation and gamesmanship." DKN also objected to various hours billed in connection with preparing intra-firm memoranda, the demand letter, the mediation brief, and the demurrer. For example, DKN noted that

18

1.55 hours in paralegal time was billed for making copies of the demurrer and placing them in a binder. More generally, DKN complained there were "multiple attorneys billing to perform the same task, sometimes more than once, throughout the invoices."

At the hearing on the motion, the trial court awarded Faerber $54,817.50 as a reasonable fee, which was $23,360, or approximately 30 percent, less than the $78,177.50 amount Faerber requested. The court said: "The billing rate is borderline, but I have not reduced it. I think it's a little high, but not so high I can say it's unreasonable." The court did not identify each billing entry it excluded, but said it was excluding the 16.5 hours billed for the unfiled sanctions motion, and what "appeared to be inflated a number of hours for an internal memo," as well as two letters to opposing counsel demanding dismissal of the complaint, and other time entries that appeared to be unrelated to the action.

B. *Applicable Law and Analysis*

An order granting or denying attorney fees is reviewed for an abuse of discretion. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148.) Civil Code section 1717, the basis for the attorney fee award to Faerber, provides that "[r]easonable attorney's fees shall be fixed by the court . . . ." A trial court has broad authority to fix the amount of a reasonable fee. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The amount awarded is governed by equitable principles and will not be disturbed on appeal unless it is "'clearly wrong'" (*ibid.*) or "'manifestly excessive in the circumstances.'" (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 210.)

19

A trial court's fee setting inquiry "ordinarily begins with the "'lodestar,'" i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1095.) "'[A] computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.]" (*Ibid*.) The reasonable hourly rate is "that prevailing in the community for similar work." (*Ibid.*; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 [lodestar rate is the "prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type."].)

Once the lodestar figure is fixed, the court may adjust it based on a consideration of factors specific to the case, in order to arrive at an amount representing the fair market value of the legal services provided. (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 870.) As relevant here, these factors include the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, and the success or failure of the representation. (*PLCM Group, Inc. v. Drexler, supra*, at p. 1096.) The court may also reduce or deny a fee request that appears unreasonably inflated or duplicative. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 & fn. 21.)

DKN claims the court abused its discretion in failing to calculate the lodestar and use it as "the starting point" in determining the $54,817.50 fee award, and that the court instead used "the excessive fee totals" submitted by Faerber as a starting point in its analysis, resulting in an excessive fee award. We disagree.

20

Counsel's time records are ordinarily the proper starting point in determining the lodestar. (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 397.) Here, the court calculated the lodestar and determined a reasonable fee by examining counsel's detailed time records and considering whether the hours billed were reasonable and the particular services rendered were reasonably related to the case. The court also determined that counsel's hourly rates were "borderline" and "a little high," but not unreasonable. The court then reduced the $78,177.50 fee request by $23,360, by striking the 16.5 hours billed for the unfiled sanctions motion and other items the court deemed "inflated," duplicative, or not reasonably related to the case. After eliminating these items, the court arrived at $54,817.50 as a reasonable fee. This was proper.

DKN claims the hourly rates billed by Faerber's Orange County-based attorneys— from $395 to $525 an hour—were higher than the hourly rates charged by attorneys performing comparable work in Riverside County. (*Camacho v. Bridgeport Fin., Inc.* (9th Cir. 2008) 523 F.3d 973, 979 ["Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."].) DKN claims it adduced "uncontroverted evidence," based on the "Laffey Matrix" that the hourly rates for lawyers in Riverside County was $355.26. Not so.

The Laffey matrix is "an inflation-adjusted grid of hourly rates for lawyers of varying levels [i.e., years] of experience in Washington D.C." published by the Department of Justice. (*Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d

21

446, 454.) As Faerber points out, the Ninth Circuit has questioned whether the Laffey matrix is a reliable indicator of hourly rates for lawyers practicing outside Washington D.C. (*Ibid*. ["[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere"]; but see *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651-652 [affirming attorney fee award based on $419.43 hourly rate calculated under the Laffey matrix as reasonable, even though that hourly rate was higher than the hourly rates billed to the client and resulted in a fee award higher than the fee actually incurred].)

The Laffey matrix assumes that the only relevant consideration in establishing an attorney's reasonable hourly rate is the number of years an attorney has been practicing. (See *In re HPL Techs., Inc., Secs. Litig.* (2005) 366 F.Supp.2d 912, 921-922.) Under the Laffey matrix for 2011-2012, Susolik, with over 20 years of experience, would have an hourly rate of $734, if he were working in Washington D.C. The two attorneys who worked under Susolik had 11 to 19 years of experience, and on that basis would have an hourly rate of $609 in Washington D.C. But rather than applying these rates, DKN argued that a $355.26 blended hourly rate should have been applied. DKN calculated this rate by applying a "local quotient" of .484 to Susolik's $734 hourly rate ($734 x .484 = $355.26). The local quotient was taken from the May 2010 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates for the Riverside-San Bernardino-Ontario area, published by the Bureau of Labor Statistics.

The court was by no means required to use the Laffey matrix in calculating the reasonable hourly rates chargeable to DKN in the Faerber matter.  Instead, the court was entitled to rely upon its own experience, and on the representations of Faerber's counsel, in determining those rates.  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 ["The 'experienced trial judge is the best judge of the value of professional services rendered in his court . . . .'"]; *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 902-904 [trial court may rely on representations of counsel in determining counsel's reasonable hourly rate].)  As noted, the court determined that the $395 to $525 hourly rates charged by Faerber's attorneys were "a little high," but not unreasonable.  This was not an abuse of discretion, given the attorneys' experience, the complexity of the issues involved, the $5.2 million amount at stake, and the result obtained.

DKN further argues Faerber failed to establish the reasonableness of his attorney's $395 to $525 hourly rates because he did not explain why he needed to hire attorneys based in Orange County, rather than attorneys based in Riverside County.  DKN points out that when local counsel is available to perform the same work at lower rates than counsel from outside the area, "[a] plaintiff must at least make '"a good-faith effort to find local counsel."'" (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1241.)  This is because, in calculating the lodestar, "[t]he reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1095.)

23

Here, however, DKN presented no evidence that the rates charged by Faerber's Orange County attorneys were higher than the rates Riverside County attorneys would have charged for comparable work. It is by no means a given that Riverside County attorneys would have charged lower hourly rates than Faerber's attorneys charged for the work they performed, as DKN assumes. (See *Perrin v. Goodrich* (C.D. Cal. May 14, 2012, ED CV 08-00595 LLP) 2012 U.S. Dist. LEXIS 67933 [at pp. *16-17] [in awarding attorney fees in civil rights litigation, hourly rate of $600 would not be unreasonable "[e]ven if the Court were to consider Riverside the relevant community for establishing hourly rates"].) Further, nothing in the record suggests the trial court did not consider or was not aware of the rates Riverside County attorneys would have charged in determining that the rates charged by Faerber's Orange County attorneys were reasonable, and comparable, to Riverside County rates.

Lastly, DKN complains that the 167.2 in hours billed was "grossly unreasonable," for various reasons, including because the time spent getting "up to speed" on the Caputo action was unnecessary; the time spent preparing the unfiled sanctions motion was unnecessary; there was no need for Faerber to hire new counsel; the present case only involved a "simple demurrer"; and other time billed by the attorneys was overlapping or duplicative. But as indicated, the court reduced Faerber's fee request by $23,360, and in doing so specifically eliminated the 16.5 hours billed for the unfiled sanctions motion and numerous items the court deemed "inflated," duplicative, or not reasonably related to the litigation. Faerber fails to point to any hours billed that were not eliminated but should

24

have been eliminated from the fee award. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [party challenging attorney fees as excessive because too many hours are claimed has burden of pointing to specific items challenged; general arguments that fees are excessive, duplicative, or unrelated do not suffice].)

## V.  DISPOSITION

The judgment dismissing DKN's complaint and the postjudgment order awarding Faerber $54,817.50 in attorney fees are affirmed.  Faerber shall recover his costs on each appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.

25

Filed 4/25/14

COURT OF APPEAL -- STATE OF CALIFORNIA

FOURTH DISTRICT

DIVISION TWO

**ORDER**

| | |
|---|---|
| DKN HOLDINGS LLC, | |
| Plaintiff and Appellant, | E055732, E056294 |
| v. | (Super.Ct.No. RIC1109512) |
| WADE FAERBER, | |
| | The County of Riverside |
| Defendant and Appellant. | |

THE COURT

Requests having been made to this Court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above entitled matter on April 9, 2014, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

26

IT IS ORDERED that said opinion be certified for partial publication, with the exception of part IV, pursuant to California Rules of Court, rule 8.1105(b).

KING
                         J.

We concur:

HOLLENHORST
           Acting P.J.

RICHLI
           J.